UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Dominik Hok Lay,<br>  *Plaintiff*,<br><br>v.<br><br>The City of Lowell, Christine P. O'Connor, Individually and in her official and supervisory capacities as the City Solicitor for the City of Lowell, Elliott J. Veloso, individually and in his official capacity as Assistant City Solicitor for the City of Lowell, Nicholas Anastasi, individually and in his official capacity as Assistant City Solicitor for the City of Lowell, Beverly Anthes, as an Election Commissioner of the City of Lowell, Zoe Dzineku, as an Election Commissioner of the City of Lowell, James Pope, as an Election Commissioner of the City of Lowell, Eileen Donoghue, as Manager of the City of Lowell,<br>  *Defendants*. | Civil Action No. 1:24-CV-10514-NMG<br><br>**<u>LEAVE TO FILE GRANTED ON<br>MARCH 21, 2024</u>** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
<u>PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(B)(1) and 12(B)(6)</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................... 2

INTRODUCTION ............................................................................................ 4

STATEMENT OF FACTS ................................................................................ 6

LEGAL STANDARD ........................................................................................ 9

ARGUMENT ................................................................................................... 10

I.  The Plaintiff's Fourteenth Amendment claims brought under 42 U.S.C. § 1983 (counts I-IV) should be dismissed ......................................................................... 10

   A.  The Plaintiff's Complaint does not state an equal protection claim because he does not allege he was selectively treated as compared with others similarly situated or that such disparate treatment was based on protected categories ......................................... 11

   B.  The Plaintiff's Complaint does not state a procedural due process claim because under *Taylor v. Beckham*, 178 U.S. 548 (1900), an elected office is not considered a "property" right actionable under the Fourteenth Amendment ....................................................... 12

   C.  The Plaintiff's claims against O'Connor and Veloso individually (counts I-II) should be dismissed because the Complaint does not plausibly allege that the process afforded to Mr. Lay was constitutionally insufficient and, even if it did, O'Connor and Veloso are entitled to qualified immunity ........................................................................................... 13

   D.  The Plaintiff's claim against former Assistant City Solicitor Anastasi (count III) should be dismissed because the Complaint does not allege he had any involvement in the Election Commission's pre-termination hearing ................................................................. 17

   E.  Count IV should be dismissed as to former Lowell City Solicitor O'Connor because the mere fact that she "signed and filed pleadings" in court to uphold the Election Commission's decision does not state a claim for a constitutional deprivation ........................................ 17

   F.  The Plaintiff's section 1983 claims should be dismissed as to the City of Lowell because the Complaint does not plausibly allege municipal liability under *Monell v. New York Dep't of Social Services*, 436 U.S. 658 (1978) ...................................................... 19

II.  The Plaintiff's remaining state-law claims should be dismissed without prejudice for lack of jurisdiction; this Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367 ............................................................................................................ 20

III.     If this Court decides to retain supplemental jurisdiction over the Plaintiff's state-law claims, then the state-law claims should be dismissed with prejudice because they fail to state a claim upon which relief can be granted ...................................................................................... 21

    A.     The Plaintiff's state constitutional claims (counts V-VI) under the Massachusetts Civil Rights Act ("MCRA"), M.G.L. c. 12, § 11I, should be dismissed because the Plaintiff does not plausibly allege his Massachusetts Declaration of Rights Articles 9 and 11 rights were violated.................................................................................................................................... 21

    B.     The Plaintiff's negligence claims (counts VII-VIII) under the Massachusetts Tort Claims Act ("MTCA"), M.G.L. c. 258, § 2, should be dismissed .................................................. 26

CONCLUSION................................................................................................................................ 30

CERTIFICATE OF SERVICE ....................................................................................................... 30

## INTRODUCTION

In 2019, the Plaintiff, Dominik Lay ("Mr. Lay" or "Plaintiff"), ran for the City of Lowell School Committee.  He lost that race, ranking seventh place in an election for six vacant School Committee Seats.  When one of the six elected School Committee members resigned mid-term on February 26, 2021, Mr. Lay then became eligible to fill that vacant seat.  Before the vacancy was filled, Christine O'Connor, the then-City Solicitor for the City of Lowell's Law Department, upon information and belief, began to investigate whether Mr. Lay was a resident of the City he was seeking to hold office in.  If Mr. Lay were not a resident of Lowell, then he would be ineligible to hold office on the School Committee.  *See* M.G.L. c. 43, § 110.  The Law Department requested a tribunal before the City's Election Commission to determine Mr. Lay's eligibility.  After a two-day hearing, the Election Commission voted to disqualify Mr. Lay; but he filed various challenges in the Massachusetts Superior Court to overturn the Commission's decision.  Ultimately, Mr. Lay was successful in his disputes before the Superior Court – and he was seated on May 12, 2021.

Nearly three years later, Mr. Lay now seeks to convert the state election dispute into a federal civil rights case, asserting his Fourteenth Amendment rights were violated and claiming the City's taxpayers owe him millions of dollars in restitution.  Although Mr. Lay ultimately succeeded with his election disputes in the Massachusetts Superior Court, the federal complaint he has now filed in this Court falls short in alleging a violation of his procedural due process rights.

For procedural due process claims, Mr. Lay must demonstrate that he was deprived of property without due process.  However, the only "property" Mr. Lay claims was unlawfully deprived was the School Committee seat, an elected office he assumed two and a half months after it became available.  The United States Supreme Court has held for the last hundred years that an elected office is not "property" as defined by the Fourteenth Amendment's procedural due process

4

clause.  *See Taylor v. Beckman*, 178 U.S. 548, 577 (1900); *see also Durham v. Eley*, 507 F.Supp.3d 956, 965–66 (M.D. Tenn. Dec. 16, 2020) (confirming *Taylor* remains binding authority).   The reason an elected office is not considered "property" for purposes of the Fourteenth Amendment is that "[a]n elected office is a public trust, not the private domain of the officeholder." *Sweeney v. Tucker*, 473 Pa. 493, 524 (1977).  Put simply, the City of Lowell's School Committee seat ***does not belong to Mr. Lay; it belongs to the people of the City of Lowell***.

Mr. Lay's constitutional claims fall short for other reasons as well.  Accepting Plaintiff's factual allegations as true, the procedures afforded to him during the Election Commission hearing were legally sufficient under existing precedent.  *See Chmielinski v. Massachusetts*, 513 F.3d 309, 318 (1st Cir. 2008).   Even if the process *were* constitutionally deficient, any deficiency was not "clearly established" law at the time of the hearing.  *See Lawless v. Town of Freetown*, 63 F.4th 61, 67 (1st Cir. 2023).  As a result, all the defendants sued in their personal capacities are entitled to qualified immunity.  Also, the Plaintiff does not state a claim subjecting the City to § 1983 municipal liability.  Under the Supreme Court's decision in *Monell v. New York Dep't of Social Services*, 436 U.S. 658, 694 (1978), for the City to be liable for a public official's unconstitutional acts, there must be a municipal "policy or custom" that was the "moving force" behind the official's unconstitutional actions.  Yet here, the Plaintiff's Complaint merely alleges that the individual defendants worked for the City at the time of the events, which is not enough for *Monell* liability. *Id*., at 691 ("a municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory").  Thus, Plaintiff's federal claims under § 1983 (counts I-IV) should be dismissed.

Finally, this Court lacks subject matter jurisdiction over the Plaintiff's remaining state-law claims (counts V-VIII).  Once the Plaintiff's federal claims are dismissed, there is no longer a basis

for the Court to exercise supplemental jurisdiction over the remaining state-law claims. *See Camelio v. American Federation*, 137 F.3d 666, 672 (1st Cir. 1998). As a result, the Court need not address the state-law claims on their merits and should dismiss them without prejudice. *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995).

For each of the above reasons, this case should be dismissed.

## STATEMENT OF FACTS

Mr. Lay was a candidate for the City of Lowell School Committee in the 2019 municipal election. *See* ECF No. 1, p. 2. He placed seventh in the election. Under the City of Lowell's election rules, the top six finishers become members of the School Committee. *Id*. The City of Lowell's Mayor, *ex officio*, serves as the seventh member and Chairman of the School Committee. *Id*. Before the 2019 municipal election, Mr. Lay served on the School Committee from 2018-2019. *Id*. During that term, Mr. Lay claimed that he was a resident of Lowell, Massachusetts. *Id*.

On February 26, 2021, a member of the Lowell School Committee resigned. *Id*. Under the City of Lowell's Plan E form of government, when a School Committee seat is vacated before a term is up, the runner-up in the election is supposed take over the vacated seat, provided that runner-up is "eligible." *See* Chapter 230 of the Acts of 1954 ("In any City having a Plan E form of city charter and having plurality voting … a vacancy in any elective body therein shall be filled forthwith for the unexpired term by the remaining members of the body concerned, who shall choose whichever of the defeated candidates who are eligible and willing to serve, and who received the highest number of votes for membership in the body in which the vacancy occurs at the last regular municipal election at which members of said body were elected").

On March 2, 2021, the City of Lowell Law Department ("the Law Department") began to investigate whether Mr. Lay was, in fact, a resident of the City of Lowell. Under Massachusetts

law and the City of Lowell's Charter, if Mr. Lay were *not* a resident of Lowell, he would be disqualified from holding office. *See* M.G.L. c. 43, § 110 (requiring candidate for municipal election who is a "registered voter of the city" and "eligible for election to any elective municipal office" to submit a signed statement under oath declaring that he or she resides in, and is a registered voter in, the city where the candidate is seeking to hold office); *see also* City of Lowell Charter (1921), § 9 (same). Following the investigation, the Law Department believed that Mr. Lay was, in fact, a resident of Brighton, Massachusetts, and not Lowell. *See* ECF No. 1, p. 1.

Mr. Lay was given a hearing before the City of Lowell Election Commissioners on Tuesday March 9, 2021 and Thursday March 11, 2021. *See* ECF No. 1, p. 3. Lay submitted a packet of evidence supporting his claimed residency in Lowell, including "a statement from counsel, an Affidavit from [Mr. Lay], [e]xhibits supporting the Affidavit, and various statutes and case law[.]" *Id*. The parties were asked to supplement their submissions by 5:00 p.m. on Wednesday March 10, 2021. *Id*. The City, ex parte, requested an extension to file its submission. *Id*. Mr. Lay, through counsel, objected to the extension. *Id*. Assistant City Solicitor Elliott Veloso, the Election Commission's legal advisor, granted the requested extension. *Id*. City Solicitor O'Connor, acting as the "prosecutor," was Veloso's supervisor. *Id*.

On the second day, March 11, 2021, the 3-member Election Commission voted 1 in favor of the City's position, 1 abstaining, and 1 not voting, that Mr. Lay was not a bona fide Lowell resident. *See* ECF No. 1, p. 3. Plaintiff's Complaint alleges two "incorrect rulings of law" by Mr. Veloso. *Id*. First, the Complaint alleges Veloso incorrectly ruled that the Chair of the Election Commission "does not vote unless there is a tie." *Id*. Second, the Complaint alleges Veloso incorrectly ruled that the Election Commission's vote of 1 in favor of the City, one abstaining, and one not voting meant the motion to disqualify Mr. Lay was carried. *Id*. In other words, the

7

Complaint alleges Veloso "knew or should have known, under Massachusetts law"[1] that such a vote "does not result in a ruling in favor of the Motion made." *Id*. Factually, the Complaint also alleges that the evidence presented against Mr. Lay included "irrelevant, incompetent, and immaterial questions" asked by Election Commssioner Pope. *Id.*, at 4.

Following the Election Commission's decision, Mr. Lay filed several lawsuits in the Massachusetts Superior Court, Middlesex County. First, on March 12, 2021, Mr. Lay filed a lawsuit in the Superior Court seeking to overturn the Election Commission's decision to disqualify Mr. Lay. *See* ECF No. 1, p. 4., citing *Lay v. City of Lowell et al.*, Massachusetts Superior Court, Middlesex County, Civil Action No. 2181CV00551 (hereinafter "the Disqualification Case"). On March 24, 2021, the Superior Court (White, J.), issued a Memorandum and order that Mr. Lay was domiciled in Lowell and eligible to take the seat. Two days later, on March 26, 2021, the City filed a notice of appeal of the Superior Court's decision, *see id*., which the Massachusetts Appeals Court denied on April 28, 2022. *See Lay v. City of Lowell*, 101 Mass. App. Ct. 15, 25 (2022).

Second, on April 8, 2021, Mr. Lay filed a lawsuit challenging the adequacy of the City's responses to Mr. Lay's public records requests concerning the residency dispute. On March 24, 2021, Mr. Lay, through counsel, served written public records requests pursuant to M.G.L. c. 4, § 7, clause 26, and M.G.L. c. 66, § 10, for "all documents that gave rise to the Defendant City's actions on the matter of the School Committee seat." *See* ECF No. 1, p. 4-5. When the City did not submit a response within ten days, on April 8, 2021, Mr. Lay filed a Complaint for Injunctive Relief and a Writ of Mandamus to compel the City to turn over documents responsive to the public

---

[1] The Complaint is not specific as to what "Massachusetts law" made Veloso's ruling incorrect. Absent any specific citations to Massachusetts law, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

records request.  *See id*., at 5, citing *Lay v Moesser, as records access officer for the City of Lowell, et al*., Massachusetts Superior Court, Middlesex County, Civil Action No. 2181CV00792 (hereinafter "the Public Records Case").  On July 22, 2022, the Superior Court (Lu, J.) ordered the City of Lowell to produce documents responsive to the request for production of documents pursuant to the Public Records Act.  *See* ECF No. 1, p. 5.  On September 29, 2022, O'Connor sent a letter to Mr. Lay's counsel stating there were no documents "other than those already produced" that were responsive to Mr. Lay's public record requests.  *Id*.  The letter stated that no written complaint had been filed with the City.  *Id*.

Third, on April 8, 2021, Mr. Lay filed a lawsuit in the Superior Court seeking to hold the City in contempt of court for not swearing Mr. Lay into office.  *See* ECF No. 1, p. 5, citing *Lay v. City of Lowell et al*., Massachusetts Superior Court, Middlesex County, Civil Action No. 2181CV00783 (hereinafter "the Contempt Case").   In response to the motion for contempt, on April 9, 2021, the City filed a motion to stay the proceedings in the Disqualification Case.  *See* ECF No. 1, p. 5.  On April 21, 2021, the City filed a motion for relief from judgment.  *See id*.  On May 4, 2021, the Superior Court in the Disqualification Case denied the City's motions to stay proceedings, to reconsider the Court's prior order, and for relief from judgment.  *Id*.  As a result of those rulings, the City swore Mr. Lay in as a member of the School Committee.  Mr. Lay was formally sworn in on May 12, 2021.  *Id*.  Since Mr. Lay was sworn in, the Contempt Case became moot, and Mr. Lay chose not to pursue that matter further.  *Id*.

## **LEGAL STANDARD**

In evaluating a Rule 12(b)(6) motion to dismiss, this Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 69, 69 (1st Cir. 2000).  To survive the motion, the

complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*, at 555. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), quoting Fed. R. Civ. P. 8(a)(2).

## ARGUMENT

I.   The Plaintiff's Fourteenth Amendment claims brought under 42 U.S.C. § 1983 (counts I-IV) should be dismissed

"A claim under § 1983 has two essential elements: [1] the defendant must have acted under color of state law, and [2] his or her conduct must have deprived the plaintiff of rights secured by the [United States] Constitution or by federal law." *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks omitted).

Here, the Plaintiff's § 1983 claims, counts I-IV of the operative Complaint, allege that Mr. Lay's "rights under the Fourteenth Amendment of the United States Constitution" were violated. *See* ECF No. 1, p. 6-9. The Complaint does not specify whether the Plaintiff is alleging either an equal protection violation or claiming his due process rights were violated. All the Complaint alleges is a denial of "the equal protection of the laws as guaranteed by the Fourteenth Amendment" based on the Defendants "instigat[ing], without proper cause …, a procedure

designed to deny Plaintiff his lawfully won seat on the Lowell School Committee." *See* ECF No. 1, p. 6-8.  That being said, even when liberally construing Plaintiff's Complaint, "none of the facts allege either an [1] equal protection or [2] due process claim under the Fourteenth Amendment." *Neufville v. Coyne-Fague*, 2021 WL 322686, *3 (D. R.I. Feb. 1, 2021).

> A. <u>The Plaintiff's Complaint does not state an equal protection claim because he does not allege he was selectively treated as compared with others similarly situated or that such disparate treatment was based on protected categories</u>

"The Equal Protection Clause requires that all similarly situated … be treated alike." *Rocket Learning, Inc. v. Rivera-Sanchez*, 715 F.3d 1, 10 (1st Cir. 2013).  "In order to establish an equal protecton violation, Plaintiff must assert both that (1) [he] was selectively treated, as compared with others similarly situated; and (2) the treatment stemmed from impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *West Street Group, LLC v. Epro*, 564 F.Supp.2d 84, 92–93 (D. Mass. July 10, 2008).  "[A] plaintiff not relying on typically impermissible bases for classification (e.g., race, religion, etc.) must show that [he] was intentionally treated differently from others similarly situated, that no rational basis exist[ed] for that difference in treatment, and that the different treatment was based on a malicious or bad faith intent to injure." *Rocket Learning, Inc.*, supra, 715 F.3d at 10.

Here, "[a]part from conclusory statements" that the Election Commission hearing was instigated "without proper cause," *see* ECF No. 1, p. 6, Mr. Lay "has produced no evidence that it was treated differently than similarly situated entities. ***This failure alone is fatal to Plaintiff's equal protection claim***." *Epro*, supra, 564 F.Supp.2d at 93 (emphasis added).  Moreover, the Complaint does not allege any disparate treatment due to "impermissible considerations" such as

Mr. Lay's race, gender, religion, sexual orientation, etc. For those reasons, to the extent that the Plaintiff couches counts I-IV as equal protection claims, this Court should dismiss those claims.

      B.  <u>The Plaintiff's Complaint does not state a procedural due process claim because under *Taylor v. Beckham*, 178 U.S. 548 (1900), an elected office is not considered a "property" right actionable under the Fourteenth Amendment</u>

The Fourteenth Amendment's procedural due process clause makes it unconstitutional for states to "deprive" a person's "property" "without due process of law." *See* U.S. Const., Amdt. 14, § 1. "Procedural due process guarantees that a state proceeding which results in a deprivation of property is fair[.]" *Licari v. Ferruzzi*, 22 F.3d 344, 347 (1st Cir. 1994). "In order to establish a procedural due process claim under section 1983, a plaintiff must allege [1] first that [he] has a property interest as defined by state law and, [2] second, that the defendants acting under color of state law, deprived [him] of that property interest without constitutionally adequate process." *Marrero-Gutierrez v. Molina*, 491 F.3d 1, 8 (1st Cir. 2007) (internal quotation marks omitted). A plaintiff claiming to have a protected property interest in a benefit "must have more than an abstract need or desire for it" or "unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *The Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

Here, the "liberty" or "property" Mr. Lay claims he was unlawfully deprived of was the City's School Committee seat, a political office. Yet more than a hundred-twenty years ago, the United States Supreme Court "determined that an unlawful denial by state action of a right to state political office is not a denial of a right of property or of liberty secured by the due process clause." *Snowden v. Hughes*, 321 U.S. 1, 7 (1944), citing *Taylor v. Beckman*, 178 U.S. 548, 577 (1900) ("public offices are mere agencies or trusts, and not property as such. Nor are the salary and emoluments property, secured by contract, but compensation for services actually rendered... [G]enerally speaking, the nature of the relation of a public officer to the public is inconsistent with

either a property or a contract right").  The Court in *Taylor* therefore concluded that the official

had been "denied no right secured by the 14th Amendment."  *Taylor*, supra, 178 U.S. at 578.

Federal courts have uniformly recognized *Taylor* and *Snowden* as controlling and have dismissed

procedural due process claims like Plaintiff's claim here.[2]

The reason an elected office is not "property" under the Fourteenth Amendment is simple:

"An elected office is a public trust, not the private domain of the officeholder."  *Sweeney v. Tucker*,

473 Pa. 493, 524 (1977).  Mr. Lay "holds office for the benefit of his constituents and cannot

justifiably rely on a private need or expectation in holding office."  *Id*.  In short, the City's School

Committee seat **does not belong to Mr. Lay; it belongs to the people of the City of Lowell**.

Plaintiff's § 1983 claims (counts I-IV) should be dismissed.

> C. <u>The Plaintiff's claims against O'Connor and Veloso individually (counts I-II)
> should be dismissed because the Complaint does not plausibly allege that the
> process afforded to Mr. Lay was constitutionally insufficient and, even if it did,
> O'Connor and Veloso are entitled to qualified immunity</u>

The Plaintiff's procedural due process claims should also be dismissed because the

Complaint does not plausibly allege a deprivation of Plaintiff's procedural due process rights.  The

Plaintiff does not challenge the adequacy of the notice afforded to him, and he does not challenge

---

[2] *See, e.g.*, *Guzman Flores v. College of Optometrists*, 106 F.Supp.2d 212, 214 (D. Puerto Rico 2000) ("the Supreme Court squarely addressed the issue now before the Court and held that there was no due process right to seek election to public office...  Therefore, Guzman does not have a valid due process claim in the instant case"); *Velez v. Levy*, 401 F.3d 75, 86–87 (2d Cir. 2005) ("we follow the Court's pronouncements on this issue [in *Taylor* and *Snowden*], and are bound to conclude that Velez lacks a constitutionally cognizable property interest in her employment as an elected official"); *Durham v. Eley*, 507 F.Supp.3d 956, 965–66 (M.D. Tenn. Dec. 16, 2020) ("however, lacking in process Durham's ouster from the state legislature may have been, he did not have a property interest in his elected office protected by the Fourteenth Amendment, and the absence of process and even the violation of state law associated with his ouster cannot be said to have violated his Fourteenth Amendment right to procedural due process").

that he was given an opportunity to be heard.[3]  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (The "root requirement" of the Due Process Clause is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest"), quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) (emphasis in original).  And his Complaint is not specific as to what aspect of the Election Commission hearing violated the Fourteenth Amendment's Due Process clause.  But given Plaintiff's allegations that (1) the Defendants "instigated" "a procedure designed to deny the Plaintiff his lawfully won seat on the Lowell School Committee," (2) Assistant City Solicitor Veloso granted the City's ex parte request to supplement their submissions, over the Plaintiff's counsel's objection, and (3) City Solicitor O'Connor, whom the Complaint alleges was "prosecuting [Mr. Lay's] case," was Veloso's supervisor; *see* ECF No. 1, p. 3, 6; the City construes Plaintiff's due process claim as an allegation that the Election Commission's pre-termination hearing "was predetermined and the hearing officer was biased." *Chmielinski v. Massachusetts*, 513 F.3d 309, 317 (1st Cir. 2008) (dismissing Fourteenth Amendment procedural due process claim based on identical theory).

Even accepting as true Plaintiff's inference that Veloso was not impartial, he still does not plausibly allege a procedural due process violation.  As the First Circuit has recognized, "there is no requirement that the hearing officer be impartial; indeed, the terminating employer may preside."[4]  *Chmielinski v. Massachusetts*, supra, 513 F.3d at 318.   And like the Plaintiff in

---

[3] Indeed, the Complaint alleges Plaintiff was permitted to submit "a statement from counsel, an Affidavit from the Plaintiff, [e]xhibits supporting the Affidavit, and various statutes and case law to prove that [Mr. Lay] in fact does reside in Lowell."  *See* ECF No. 1, p. 3.

[4] Thus, the fact that Veloso worked under O'Connor's supervision does not render the Election Commission's procedures unconstitutional.  Under *Chmielinski*, O'Connor could have personally presided over the hearing ***and simultaneously prosecuted*** Mr. Lay, and it would not have offended Mr. Lay's procedural due process rights.

*Chmielinski*, "[Mr. Lay's] complaint does not allege anywhere that any alleged bias on [the City's] part deprived him of the opportunity to put his version of the facts before the decisionmaker, or that there was any error of primary facts in the grounds used for termination that could be explained only by bias. *Chmielinski*, supra, 513 F.3d at 318. "[Mr. Lay] may disagree with the exercise of judgment which led [the loss of the School Committee seat], but that does not state a due process concern arising out of the hearing itself." *Chmielinski*, supra, 513 F.3d at 318. For the exact same reasons articulated by the First Circuit in *Chmielinski*, the Plaintiff's complaint does not plausibly allege that the process afforded to Mr. Lay was constitutionally inadequate.

But even if the Complaint plausibly alleged a deprivation of Mr. Lay's Fourteenth Amendment procedural due process rights, Mr. Lay's § 1983 claims against Christine O'Connor, Veloso, and Anastasi (collectively "the Law Department Defendants") should be dismissed because all three are entitled to qualified immunity. "Qualified immunity is a doctrine that shelters government officials from civil damages liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McKenney v. Mangino*, 873 F.3d 75, 80 (1st Cir. 2017) (internal quotation marks omitted), citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Put another way, qualified immunity, protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Courts long have recognized that qualified immunity consists of both an immunity from suit and an immunity from damages... Thus, claims of qualified

immunity ought to be resolved at the earliest practicable time." *McKenney*, supra, 873 F.3d at 80 (citation omitted).

Mr. Lay cannot point to any case suggesting the individual defendants' conduct was "clearly established" as unconstitutional. In fact, recent precedent suggests the constitutionality of their actions was ***not*** clearly established. In *Lawless v. Town of Freetown*, 63 F.4th 61, 67 (1st Cir. 2023), the Court was asked to determine whether three members of the Town of Freetown's Board of Selectmen were entitled to qualified immunity where the Plaintiff's Complaint alleged bias at a pre-termination hearing that was so substantial that it "plugged the [board members'] ears so that they did not actually hear her response." The First Circuit held that even in such an extreme case, qualified immunity was warranted. "[T]he threshold for unconstitutional bias in pretermination government employment proceedings is about as clear as mud. In fact, there is not even a basic requirement that hearing officers be impartial in the employment context." *Id*., at 68, citing *Chmielinski*, supra, 513 F.3d at 318. "To the contrary, ***it is clearly established that employing authorities may preside at termination hearings even though they instituted the termination proceedings***." *Lawless*, supra, 63 F.4th at 68. *Compare* ECF No. 1, p. 6-7 (alleging Veloso and O'Connor "instigated" Election Commission's procedure to deprive Mr. Lay of the School Committee seat), *with* ECF No. 1, p. 6-7 (alleging Veloso was acting as the "legal advisor to the Election Commissioners" and "Director of Elections").

The Plaintiff's Complaint appears to be based on impermissible bias by Veloso which resulted in an outcome that Mr. Lay did not like. Pursuant to the First Circuit's holding in *Lawless*, such a theory, even if it amounted to a constitutional violation, *cf. Chmielinski*, supra, 513 F.3d at 318 (holding that such a theory did *not* amount to a constitutional violation), was not clearly established as unconstitutional at the time. Ultimately, "[g]iven that the clear legal statements

available in binding precedent tend more to frustrate than support [Mr. Lay's] due process claim against the [Defendants]," *Lawless*, supra, 63 F.4th at 69, the Court should dismiss Plaintiff's § 1983 claims (counts I-IV) against the individual defendants under the qualified immunity doctrine.

D. <u>The Plaintiff's claim against former Assistant City Solicitor Anastasi (count III) should be dismissed because the Complaint does not allege he had any involvement in the Election Commission's pre-termination hearing</u>

Next, count III of the Plaintiff's Complaint – which alleges former Lowell Assistant City Solicitor Nicholas Anastasi violated Plaintiff's Fourteenth Amendment rights – should be dismissed pursuant to the *Iqbal* and *Twombly* pleading standard because the Complaint does not allege Anastasi had any involvement in Mr. Lay's Election Commission hearing.  Other than the barebones assertions in count III that Anastasi "co-operated with and furthered" "a procedure designed to deny the Plaintiff his lawfully won seat on the Lowell School Committee", *see* ECF No. 1, p. 7, and "signed and filed pleadings seeking to uphold [the Election Commission's] decision", *id*., at 12, the Complaint contains no well-pleaded facts alleging Anastasi contributed to Mr. Lay's purported deprivation of his civil rights.  The entirety of the Plaintiff's statement of facts does not discuss anything Anastasi did during the Election Commission's pre-termination hearing.  Plaintiff's Complaint does not allege a "plausibly entitlement to relief" as to Anastasi because the Complaint has merely "alleged" but has not "show[n]" that Mr. Lay is entitled to relief. *Twombly*, 550 U.S. at 559; *Iqbal*, supra, 556 U.S. at 679.

Thus, even if the Complaint plausibly alleged Mr. Lay was deprived of a property right without due process, count III of the Plaintiff's complaint should still be dismissed as to Anastasi in his personal capacity.

E. <u>Count IV should be dismissed as to former Lowell City Solicitor O'Connor because the mere fact that she "signed and filed pleadings" in court to uphold the Election Commission's decision does not state a claim for a constitutional deprivation</u>

Plaintiff's final federal civil rights claim, count IV – which alleges O'Connor violated Plaintiff's due process rights by "sign[ing]" and "fil[ing]" "pleadings in the Superior Court and the Appeals Court to uphold the findings of the Defendant Election Commissioners" – should be dismissed. *See* ECF No. 1, p. 8. Merely filing pleadings in court that the Plaintiff or his counsel disagrees with does not constitute a procedural due process violation. By filing pleadings in the Superior Court and Appeals Court, Mr. Lay was *given* post-termination procedural due process.

"Procedural due process guarantees that a state proceeding which results in a deprivation of property is fair[.]" *Licari v. Ferruzzi*, supra, 22 F.3d at 347. "The essentials of procedural due process comprise notice of the charges and a reasonable chance to meet them… The basic purport of the constitutional requirement is that, before a significant deprivation of liberty or property takes place at the state's hands, the affected individual might be forewarned and afforded an opportunity to be heard at a meaningful time and in a meaningful manner… As the rubric itself implies, ***procedural due process is simply a guarantee of fair procedure***." *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990) (emphasis added; citations omitted; internal quotation marks omitted).

Here, count IV merely alleges that O'Connor made filings on behalf of the City opposing the relief Mr. sought in court. Mr. Lay does not allege that he received inadequate notice of the filings O'Connor made. He does not contend that O'Connor's filings prevented him from stating his positions to the Massachusetts Superior Court or Appeals Court. As Plaintiff alleges in his Complaint, the courts ultimately sided *with the Plaintiff* and concluded he should be seated on the School Committee. Because count IV does not challenge the adequacy of the post-termination judicial procedures afforded to Mr. Lay in the Superior Court, count IV should be dismissed as to O'Connor in her personal capacity.

F. The Plaintiff's section 1983 claims should be dismissed as to the City of Lowell because the Complaint does not plausibly allege municipal liability under *Monell v. New York Dep't of Social Services*, 436 U.S. 658 (1978)

Since, as discussed above, the Complaint does not plausibly allege the deprivation of Mr. Lay's Fourteenth Amendment rights, counts I-IV should be dismissed as to the City of Lowell. *See Leavitt v. Correctional Medical Services, Inc.*, 645 F.3d 484, 504 (1st Cir. 2011) ("Where, as here, there is no constitutional violation by the employees of the municipality, there can be no liability predicated on municipal policy or custom"), citing *Kennedy v. Town of Billerica*, 617 F.3d 520, 531 (1st Cir. 2010) ("*Monell* can impose municipal liability only for underlying, identifiable constitutional violations"); *see also City of Los Angeles v. Heller*, 475 U.S. 796 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite besides the point" (emphasis in original)).

Yet even if Mr. Lay *had* plausibly alleged a deprivation of his Fourteenth Amendment rights, he has not plausibly alleged municipal liability under the United States Supreme Court's decision in *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978). In *Monell*, the Supreme Court outlined the circumstances a municipality could be held liable for a deprivation of constitutional rights claims under 42 U.S.C. § 1983. The Court held that "a municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id*., at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*., at 694. "Official municipal policy includes, among other things, the acts of [the City's] policymaking officials." *Saldivar v. Racine*, 818 F.3d 14, 20

(1st Cir. 2016), citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  "[C]ourts have established two requirements for plaintiffs to meet in maintaining a § 1983 action grounded upon an unconstitutional municipal custom.  First, the custom or practice ***must be attributable to the municipality***.  In other words, it must be so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice."  *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989) (emphasis added).  Second, "the custom must have been the cause of and the moving force behind the deprivation of constitutional rights."  *Id*.

Neither of those elements were met here.  First, the Complaint does not allege any municipal custom or practice attributable to the City that was "well settled" and "widespread."  Second, Mr. Lay does not allege a policy or custom that was the "moving force" behind the constitutional violation.  All the Complaint alleges is that the individual defendants (1) deprived Mr. Lay of his Fourteenth Amendment rights, and (2) were working for the City at the time.  But as the Court recognized in *Monell*, "a municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell*, supra, 436 U.S. at 691.

For the above reasons, the Plaintiff has not plausibly alleged that the City, as a municipality, is liable under 42 U.S.C. § 1983; and counts I-IV should be dismissed as to the City of Lowell.[5]

II.    The Plaintiff's remaining state-law claims should be dismissed without prejudice for lack of jurisdiction; this Court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367

---

[5] For identical reasons, counts I-IV should be dismissed as to the individual defendants named in their *official* capacities.  "A suit against a government official in his or her official capacity is the same as a suit 'against [the] entity of which [the] officer is an agent.'"  *Hudson v. Maloney*, 3267 F.Supp.2d 206 (D. Mass. July 23, 2004), quoting *Monell*, supra, 436 U.S. at 690 n. 55.

The original basis for this Court's subject-matter-jurisdiction over the Plaintiff's state-law claims is supplemental jurisdiction under 28 U.S.C. § 1367. *See* ECF No. 1, p. 1. "A federal court exercising original jurisdiction over federal claims also has 'supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *Camelio v. American Federation*, 137 F.3d 666, 672 (1st Cir. 1998), quoting 28 U.S.C. § 1367(a).

"In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988). This "balance of factors" especially favors dismissal where all of the federal claims are dismissed at the early pleading stage. *See Camelio*, supra, 137 F.3d at 672 ("the balance of competing factors will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation"); *see also Rodriguez v. Doral Mortg. Club*, 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's remaining federal claims at the early stages of a suit, well before commencement of a trial, will trigger the dismissal without prejudice of any supplemental state-law claims"). Here, because Mr. Lay's federal claims are insufficient, the state-law claims should be dismissed without prejudice. *See Rodriguez*, supra, 57 F.3d at 1177.

III.   <u>If this Court decides to retain supplemental jurisdiction over the Plaintiff's state-law claims, then the state-law claims should be dismissed with prejudice because they fail to state a claim upon which relief can be granted</u>

A.   <u>The Plaintiff's state constitutional claims (counts V-VI) under the Massachusetts Civil Rights Act ("MCRA"), M.G.L. c. 12, § 11I, should be dismissed because the Plaintiff does not plausibly allege his Article 9 and 11 rights were violated</u>

Mr. Lay's first set of state law claims against both the City and the individual defendants (counts V-VI[6]) allege a violation of his state constitutional rights under the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11H and 11I ("MCRA").  Section 11H of the MCRA prohibits:  "*[A]ny person or persons*, whether or not acting under color of law, [from] interfere[ing] by threats, intimidation or coercion, or attempt[ing] to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the … commonwealth[.]"  *See* M.G.L. c. 12, § 11H(a)(1) (emphasis added).  The Massachusetts Appeals Court has held that "a municipality is not a 'person' covered by the [MCRA]."  *Howcroft v. City of Peabody*, 51 Mass. App. Ct. 573, 591–92 (2001).  Thus, counts V-VI should be dismissed with prejudice as to the City and the individual defendants in their official capacities.  *See Hudson v. Maloney*, 326 F.Supp.2d 206, 213 (D. Mass. July 23, 2004) ("A suit against a government official in his or her official capacity is the same as a suit 'against [the] entity of which [the] officer is an agent.'"), quoting *Monell*, supra, 436 U.S. at 690 n. 55.  All that must be decided is whether the MCRA claims against the defendants in their individual capacities are valid.

To establish a claim under the MCRA, the Plaintiff must prove that: "(1) their exercise or enjoyment of rights secured by the Constitution or laws of … the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion."  *Swanset Development Corp. v. City of Taunton*, 423 Mass. 390, 395 (1996).  The Defendants address each element in turn.

---

[6] Count VI – which alleges that the defendants interfered with the Plaintiff's state constitutional right to recourse to the laws under art. 11 of the Massachusetts Declaration of Rights – is listed twice, on pages 10 to 11 of Mr. Lay's Complaint.  Because both versions of count VI are identical, the Defendants treat them collectively as "count VI."

Counts V and VI allege that Election Commissioners Beverly Anthes, Zoe Dzineku, and James Pope (collectively "the Election Commission Defendants") and the Law Department Defendants interfered with Articles 9 and 11 of the Massachusetts Declaration of Rights, respectively.  Article 9 provides: "All elections ought to be free; and all the inhabitants of this commonwealth, having such qualifications as they shall establish by their frame of government, have an equal right to elect officers, and ***to be elected, for public employments***."  *See* Mass. Const., pt. 1, art. 9.  Article 11 provides: "Every subject of the commonwealth ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character. He ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws."  *See* Mass. Const., pt. 1, art. 11.  Plaintiff does not plausibly allege his state constitutional rights were interfered with, or that the individual defendants even *attempted* to interfere with them.[7]

As for Article 9, "the right 'to be elected,' ... ***is not absolute***.  It is subject to legislation reasonably necessary to achieve legitimate public objectives."  *Opinion of the Justices to the Senate*, 375 Mass. 795, 811 (1978) (emphasis added).  The statutory requirement under M.G.L. c. 43, § 110 – that a candidate actually resides in the city in which they are seeking public office – is

---

[7] In fact, as to Anthes and Dzineku, the "interference" element is tenuous at best.  Even though only one Commissioner voted to disqualify Mr. Lay, *see* ECF No. 1, p. 3, Mr. Lay chooses to sue ***all three*** Commissioners personally.  The Complaint does not specify which of the three voted to disqualify Mr. Lay.  But the recording of the Commission's tribunal, which is a "matter[] of public record" that the Court may consider "when reviewing a motion to dismiss for failure to state a claim," *Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013), reflects that ***only*** Pope voted to disqualify Mr. Lay.  *See Election Commission – March 11, 2021*, (Apr. 1, 2021), YOUTUBE.COM, available at  https://www.youtube.com/watch?v=Co27DEaZ0Y8  (last visited Mar. 15, 2024). Anthes and Dzineku, at a minimum, should be dismissed from counts V-VI because they did not engage in "interference or attempted interference" of Plaintiff's electoral seat.

precisely the type of "legislation reasonably necessary to achieve legitimate public objectives" that art. 9 contemplates. *Opinion of the Justices to the Senate*, supra, 375 Mass. at 811. Thus, it cannot be said that in seeking to enforce section 110's residency requirement, the Law Department or Election Commissioners plausibly engaged in actual or attempted interference with Mr. Lay's "right to be elected." *See* Mass. Const., pt. 1, art. 9.

As for Article 11, none of the City's alleged actions constituted even an *attempted* interference with Mr. Lay's "recourse to the laws", *see* Mass. Const., pt. 1, art. 11, because all that is alleged in his Complaint is that (1) the individual defendants "led a campaign using their official duties … to deny Plaintiff his rights"; (2) "[a]s a direct and consequential result of [those] actions, individually and collectively, Plaintiff was forced to pay filing fees in court, [s]ummonses fees, [c]onstable fees, transcript fees, and attorney's fees in Middlesex Superior Court and the Appeals Court"; and (3) "rather than be able to obtain right and justice freely, Plaintiff was forced to purchase justice." *See* ECF No. 1, p. 10-11. Plaintiff's central complaint as to Article 11 is that Mr. Lay was forced to spend legal fees to file an administrative appeal and oppose the City's appeal. Mr. Lay's legal theory regarding Article 11 does not withstand scrutiny. Nothing in Article 11's text or history suggests a legislative intent to give litigants a constitutional right to, as Mr. Lay describes it, "obtain right and justice *freely*[.]" *See* ECF No. 1, p. 10-11 (emphasis added). In other words, Article 11 does not guarantee an unfettered right to retain recourse of the laws at no personal expense, or without having to spend attorney's fees.[8] The administrative appeal process

---

[8] If Mr. Lay's legal theory *were* valid, then any time a public employee denied a presentment letter filed with a city under the Massachusetts Tort Claims Act ("MTCA"), M.G.L. c. 258, § 4, then the plaintiff in that personal injury matter could not only sue the municipality for negligence, but could also sue the public employee personally for an Article 11 violation for "forc[ing]" that plaintiff "to pursue justice." *See* ECF No. 1, p. 10-11. Liability would reach even further than public officials because the MCRA lets plaintiffs sue public *and* private actors. *See Redgrave v. Boston Symphony Orchestra, Inc.*, 855 F.2d 888, 901 (1st Cir. 1988) (the MCRA "permit[s] a plaintiff to sue a private

afforded to the Plaintiff by filing with the Superior Court *was* Plaintiff's opportunity to exercise his right to recourse of the laws under Article 11.  And he does not allege any conduct by the City that interfered with, or attempted to interfere with, his ability to seek redress in the courts.  The City filing pleadings opposing Plaintiff's position – commonplace in *any* litigation dispute – is not enough to allege an attempted interference with a right to obtain recourse under Article 11.

Yet even assuming Mr. Lay plausibly alleged an *attempted* interference of his Article 9 and 11 rights, the Complaint still "fail[s] to identify threats, intimidation or coercion" by either the Law Department or the Election Commission Defendants "sufficient to give rise to an MCRA claim." *McGunigle v. City of Quincy*, 835 F.3d 192, 205 (1st Cir. 2016).  Put differently, under the MCRA, "[a] direct violation of civil rights is not, without a showing of coercive behavior, actionable." *Britton v. Maloney*, 901 F.Supp. 444, 453 (D. Mass. 1995).  "On its face, the MCRA contemplates a two-part sequence: (1) the defendant threatens, intimidates, or coerces the plaintiff in order to (2) cause the plaintiff to give up something that the plaintiff has the constitutional right to do." *McLeod v. Fessenden School*, 624 F.Supp.3d 36, 44 (D. Mass. 2022).

> 'Threat' in this context involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm… 'Intimidation' involves putting in fear for the purpose of compelling or deterring conduct…  ['Coercion' means] the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.

---

party for action that would be, absent the MCRA, forbidden only to state actors"); *Sarvis v. Boston Safe Deposit and Trust Co.*, 47 Mass. App. Ct. 86 (1999) (holding private corporations can be held vicariously liable for their employee's civil rights violations).  Imagine a plaintiff in a personal injury dispute serves a demand letter on a private corporation whose employee negligently injured the plaintiff, and that corporation denies the demand letter.  Under Mr. Lay's theory, the plaintiff could not only sue the corporation for negligence, but *also* could sue the corporation under the MCRA for violating Article 11 by preventing that plaintiff from "obtain[ing] right and justice freely." *See* ECF No. 1, p. 10-11.  Mr. Lay's constitutional theory is untenable; it would allow any litigation dispute in which one party makes a demand, and the other party rejects that demand, to be transfigured into a state constitutional civil rights dispute.  This is not what the Legislature intended when it enacted the MCRA.

*Planned Parenthood League of Massachusetts, Inc. v. Blake*, 417 Mass. 467, 474 (1994) (citations omitted; internal quotation marks omitted).  Here, other than the barebones allegations that the Law Department Defendants and Election Commission Defendants used "threats, intimidation, or coercion, pursuant to her position as City Solicitor for the City of Lowell," *see* ECF No. 1, p. 9-10, the Complaint does not allege any well-pleaded facts which plausibly support a legal conclusion that threats, coercion, or intimidation were used in violation of the MCRA.  This is fatal to the Plaintiff's MCRA claim.  Even if the Court were to find Plaintiff's rights to "be elected" under Article 9 or have "recourse to the laws" under Article 11 were infringed, or that the individual defendants tried to infringe on those rights, his constitutional claims are still legally insufficient.

For the reasons stated above, this Court should dismiss counts V and VI against the City of Lowell, the Law Department Defendants, and the Election Commission Defendants.

B.  The Plaintiff's negligence claims (counts VII-VIII) under the Massachusetts Tort Claims Act ("MTCA"), M.G.L. c. 258, § 2, should be dismissed

Finally, the state-law negligence claims should be dismissed because Mr. Lay has not stated a claim for negligence against either the City or O'Connor and Donoghue individually.  First, under the Massachusetts Tort Claims Act ("MTCA"), O'Connor and Donoghue cannot be held personally liable for their negligent acts, if any, as a matter of law.  "[P]ublic employees who commit negligent or wrongful acts or omissions 'while acting within the scope of [their] office or employment' are immune from liability."  *Berry v. Commerce Insurance Company*, 488 Mass. 633, 636 (2021).  "[L]iability for the negligent acts of a public employee committed within the scope of employment is visited upon the public employer, and not the employee."  *Farrah ex rel. Estate of Santana v. Gondella*, 725 F.Supp.2d 238, 246 n. 9 (D. Mass. 2010) (Stearns, J.).  Applying those principles here, O'Connor and Donoghue should be dismissed from counts VII & VIII, respectively.

Second, Mr. Lay's negligence claims against the City, as a public employer, do not withstand scrutiny either. Because the Plaintiff's negligence claims are premised on a failure to train or supervise, and not any affirmative acts on the part of O'Connor or Donoghue, the City is exempt from liability under section 10(j) of the MTCA. "Public employers shall be liable for injury … or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances." *See* M.G.L. c. 258, § 2. However, the City's liability for negligence is limited by section 10 of the MTCA, which provides in relevant part: "The provisions of sections one to eight, inclusive, shall not apply to … any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employee or any other person acting on behalf of the public employer." *See* M.G.L. c. 258, § 10(j). "[T]he principal purpose of § 10(j) is to preclude liability … for failures to prevent or diminish harm." *Jacome v. Commonwealth*, 56 Mass. App. Ct. 486, 489 (2002).

Here, count VII alleges O'Connor's "negligent *failure*" to "train and supervise her staff caused damages to the Plaintiff[.]" *See* ECF No. 1, p. 12 (emphasis added). Count VIII, which was made against Eileen Donoghue, the former City Manager for the City of Lowell, alleges Donoghue's "negligent *failure*" to "train and supervise" the City's Law Department caused damages. *See id.*, at 13 (emphasis added). Because both claims are premised on a failure to train and supervise, and not based on any affirmative acts by O'Connor and Donoghue, the MTCA claims should be dismissed against the City of Lowell under section 10(j). *See, e.g.*, *Doe v. Fournier*, 851 F.Supp.2d 207, 224–25 (D. Mass. Feb. 22, 2012) ("Courts have repeatedly held that a claim for negligent supervision alone is barred by section 10(j)").

Third, even if section 10(j)'s exemption was not fatal Mr. Lay's negligence claims, the supposedly negligent public employees, Assistant City Solicitors Veloso and Anastasi, did not owe any legally cognizable duty to Mr. Lay. "To recover for negligence, a plaintiff must show the existence of an act or omission in violation of a ... duty owed to the plaintiff[] by the defendant... ***Whether a defendant owes a plaintiff a duty of reasonable care is a question of law*** that is decided by reference to existing social values and customs and appropriate social policy... If no such duty exists, a claim of negligence cannot be brought." *Roe No. 1 v. Children's Hosp. Medical Center*, 469 Mass. 710, 713–14 (2014) (emphasis added). The Plaintiff alleges that Veloso was "acting as the legal advisor to the Election Commissioners." *See* ECF No. 1, p. 3. Anastasi, on behalf of the City, "signed and filed pleadings seeking to uphold [the Election Commission's] decision[.]" *See* ECF No. 1, p. 12. The Complaint alleges negligence by Veloso and Anastasi, in their capacity as attorneys for the City of Lowell. As a result, the underlying "negligence" by Anastasi and Veloso upon which Plaintiff's negligent supervision claims are based are legal malpractice claims, requiring Plaintiff to show a breach of Veloso and Anastasi's duty of *professional* care. "A tort plaintiff seeking damages for legal malpractice must establish that ... the attorney had a duty toward the plaintiff[.]" *Glenn v. Aiken*, 409 Mass 699, 708–09 (1991) (Liacos, C.J., concurring).

Veloso and Anastasi did not owe a legal duty to Mr. Lay because as the Complaint concedes, ***Veloso and Anastasi represented the City of Lowell, not Mr. Lay***. *See* ECF No. 1, p. 1-2. "Generally, there is no duty and liability of an attorney as to an adversary third party with whom the attorney has been engaged, in litigation, etc., on behalf of a client." *See* Stuart M. Speiser et al., *Liability to Nonclient Third Persons Generally*, 4A American Law of Torts § 15:107 (2019). In other words, "nonclient third parties with whom there is no 'privity'" cannot sue an attorney for legal malpractice "in the absence of fraud, collusion, or acts of negligence dangerous

to the lives of others[.]"[9]   *Id.*   It is true that in Massachusetts, an attorney is not "absolutely insulated from liability to nonclients."   *Page v. Frazier*, 388 Mass. 55, 65 (1983).   For example, the SJC "recognized that an attorney owes a duty to nonclients who the attorney knows will rely on the services rendered."   *Robertson v. Gatson Snow & Ely Bartlett*, 404 Mass. 515, 524 (1989). The SJC has "cautioned, however, that where an attorney is also under an independent and potentially conflicting duty to a client, we are less likely to impose a duty to nonclients."   *Spinner v. Nutt*, 417 Mass. 549, 552 (1994) (internal quotation marks omitted).   It is axiomatic that Veloso and Anastasi, as attorneys for Lowell, have independent and conflicting duties to the City and, accordingly, neither of them owes any legally cognizable duty to Mr. Lay as a candidate for the School Committee seat.   *See, e.g.*, *Johnson v. Kosseff*, 2013 WL 207252, at *10 (R.I. Super. Jan. 11, 2013) (complaint's allegations of legal malpractice failed because opposing counsel did not owe legal duty to plaintiffs); *Doyle v. Shlensky*, 120 Ill.App.3d 807, 811–12 (1983) (same).   Simply put, the Complaint does not allege Veloso and Anastasi were *Mr. Lay's* attorneys.   The Complaint does not allege any contractual, third-party privity that would impose a duty on Veloso and Anastasi to Mr. Lay, a non-client.   As a result, Mr. Lay cannot sue the City on the theory that Veloso and Anastasi were negligent, or that O'Connor and Donoghue negligently supervised Veloso and Anastasi.

For the above reasons, counts VII-VIII of the Plaintiff's Complaint should be dismissed.

---

[9] The so-called "privity" requirement in legal malpractice cases exists for an important reason: an attorney has a professional obligation to vigorously advocate his or her client's interests without being compromised by obligations to non-clients.   *See* Rules 1.2, 1.7, 1.9, and 3.1, Mass. Rules of Professional Conduct.   If an attorney owes an identical duty of professional care to both their client *and* a non-client adversary, then neither can be served effectively by that attorney.   *See Rhode v. Adams*, 288 Mont. 278, 284–85 (1998).

## CONCLUSION

For the reasons stated herein, the Defendants respectfully request that this Court GRANT the Defendants' motion to dismiss all counts of the Plaintiff's Complaint.

Respectfully submitted,
The Defendants,
By their attorneys,

**/s/ Michael M. Broderick**
Michael M. Broderick, Esq., First Assistant City Solicitor
BBO # 660652
mbroderick@lowellma.gov
Thomas G. Wood, Esq., Second Assistant City Solicitor
BBO # 707877
twood@lowellma.gov
City of Lowell Law Department
375 Merrimack Street, 3rd Floor
Lowell, MA 01852-5909
(978) 674-4050

Dated: March 21, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2024, the foregoing document was filed electronically through the CM/ECF system and was served upon all registered participants in this case, as identified in the Notice of Electronic Filing (NEF).

**/s/ Thomas G. Wood**
Thomas G. Wood, Assistant City Solicitor