Name: Roland L. Milliard
Address: Law Office of Roland L. Milliard, 1470 Lakeview Avenue, Suite 2, Dracut, MA 01826
Telephone: 978-957-6799/roland@milliardlaw.com

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

### Civil Action No.: 1:24-CV-10514-NMG

| | |
|---|---|
| Dominik Hok Lay | ) |
|     Plaintiff | ) |
| vs. | ) |
| The City of Lowell, Christine P. O'Connor, individually | ) |
| and in her official and supervisory capacities as the City | ) |
| Solicitor for the City of Lowell, Elliott J. Veloso, | ) |
| individually and in his official capacity as Assistant City | ) |
| Solicitor for the City of Lowell, Nicholas Anastasi, | ) |
| individually and in his official capacity as Assistant City | ) |
| Solicitor for the City of Lowell, Beverly Anthes, as an | ) |
| Election Commissioner of the City of Lowell, Zoe Dzineku, | ) |
| as an Election Commissioner of the City of Lowell, | ) |
| James Pope, as an Election Commissioner of the City of | ) |
| Lowell, Eileen Donoghue, as Manager of the City of Lowell | ) |
|     Defendants | ) |

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER Fed. R. Civ. Pro. 12(b) 1 and 12(b) 6.

Very respectfully,
The Plaintiff,
by his attorney,


//s//Roland L. Milliard
Roland L. Milliard
BBO# 559361
1470 Lakeview Ave., Suite 2
Dracut, MA  01826
(978)-957-6799
roland@milliardlaw.com

April 1, 2024

1

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ……………………………………………………………2

INTRODUCTION……………………………………………………………….3

STATEMENT OF FACTS……………………………………………………...5

LEGAL STANDARD………………………………………………………..10

ARGUMENT…………………………………………………………………11

    I.    The Plaintiff states colorable claims under 42 U.S.C., §1983 (Counts I-IV) and they should not be dismissed. ……………………………………11

        A.  The Plaintiff's Complaint should not be dismissed as it does state an equal protection claim and disparate treatment does not have to be based on a protected category. ……………………………………13

        B.  The Plaintiff's Complaint should not be dismissed as he is not asserting a "property right" in an elected office but rather is claiming a denial of his rights to due process and equal treatment. …………………………14

        C.  The Plaintiff claims against O'Connor and Veloso individually (counts I-II) should not be dismissed as the Complaint does allege the process afforded to Mr. Lay was constitutionally insufficient and O'Connor and Veloso are not entitled to qualified immunity. …………………………………14

        D.  The Plaintiff's complaint against former Assistant City Solicitor Anastasi (Count III) should not be dismissed as it does allege a colorable cause of action. ……………………………………………………..15

        E.  Count IV should not be dismissed as to former City Solicitor O'Connor because she did, in fact, sign and file Pleadings in Superior Court and the Appeals Court knowing full well there had been no compliance with the governing statutes for the decision of the Defendant Election Commissioners. ……………………………………………………17

        F.  The Plaintiff's §1983 claims should not be dismissed as it does allege plausible municipal liability under *Monell v. New York Dep't of Social Services,* 436 U.S. 658 (1978). …………………17

    II.    The Plaintiff's remaining state law claims should not be dismissed as Defendants have failed to meet their burden to dismiss the Federal claims. In the alternative, the Federal Court should retain jurisdiction as the Statute of Limitations has run and Plaintiff's meritorious claims would

be dismissed with no alternative forum for adjudication. …………………18

III.      If this Court retains Jurisdiction, it should not the state law claims as
          Plaintiff does state a claim upon which relief may be granted. ……………19

    A.   The Plaintiff's state constitutional law claims under the Massachusetts
         Tort Claims Act do plausibly allege his Article IX and Article XI
         rights were violated. …………………………………………………………19

    B.   The Plaintiff states actionable claims under M.G.L. c. 258, §2,
         The Massachusetts Tort Claims Act. ………………………………………19


CONCLUSION……………………………………………………………………..20

## **INTRODUCTION**

In the municipal election for the City of Lowell in 2019, the Plaintiff, Dominik Lay, was a candidate for re-election to the Lowell School Committee.  The top six vote recipients are elected.  A member of the City counsel who is chosen by the other counselors to become mayor acts as *ex officio* chair and is the seventh member.  The Plaintiff finished seventh in the field and so lost his seat.

On February 26, 2021, a member of the school committee resigned, and, in accordance with past practice and procedures, the now vacant seat should have been offered to the Plaintiff as he was "the next highest vote getter, qualified and willing to serve."

The Law Department of the City of Lowell sent a letter dated March 2, 2021, to the Mayor of Lowell, and claimed that "Questions, however, regarding Mr. Lay's eligibility have come to the attention of the law department.".  The Law Department, because of these "questions", then instituted an investigation regarding whether the Plaintiff was, in fact, a resident of the City of Lowell.

After an adverse result before the Defendant Election Commissioners, and filing three actions in Superior Court, as well as being the Appellee in two Appeals filed by Defendant City of Lowell, Plaintiff prevailed and took his seat.

The Defendants' introduction is remarkable for its attempt to frame the argument around non-issues and fails to address, in a meaningful fashion, what is truly at stake in the instant action.

First, the Defendants fail to address how Defendant O'Connor, a licensed attorney in the Commonwealth of Massachusetts, presumably aware of the relevant statutes, and even if she was not aware, was made aware in numerous hearings and written submissions by the Plaintiff in the matters prior to the instant action, carried out a hearing at the Election Commission and signed Pleadings opposing Plaintiff's state court actions **fully knowing there was no written complaint under either of two statutes to support her opposition.**

Secondly, the Plaintiff does not claim a property right to the office of school committeeman; that is a creature of the Defendants.  Plaintiff has maintained, and continues to maintain, that his rights as a citizen of the United States and the Commonwealth of Massachusetts, to be treated equally and fairly under the laws of Massachusetts and the United States of America had been denied to him because of the unlawful actions of the Defendants. Those rights include due process; which include the right to a fair and impartial hearing, the right to be challenged for his eligibility to hold office in accordance with the laws provided for such challenges, and the right to know who is the accuser that he is ineligible to serve.  It also includes his right to run for public office.  Defendants' Introduction is too narrow as to the scope of Plaintiff's injury.

The Defendants' claim that the procedures afforded him during the Election Commission hearing were legally sufficient is ridiculous and flies in the face of American traditions of due process.  A hearing where the legal advisor to the hearing officers is the subordinate of the petitioning authority's counsel is clearly a conflict of interest.  A hearing being commenced without a proper complaint to initiate the process is unheard of in American jurisprudence.  To claim that these two deficiencies are not "clearly established law" is breath taking.  Not only are these two points "clearly established"; they are so fundamental as to be classified as "black letter law.  The liability of the natural Defendants does not arise from the mere fact that the Defendant municipality employed them.  These Defendants have special knowledge.  Not only are they licensed lawyers, they are practicing in the field of municipal law.  Their level of knowledge in this area of practice should be greater than that of a general, private practitioner.  When the actual case law and statutes are cited for them, and they still carry on, and at least Supervising attorney knows there is no complaint under either of the statutes, this rises above mere negligence.

In essence, the Defendants are arguing that forcing the Plaintiff to litigate five separate actions in state court, and a hearing before the Election Commission, ***__with no basis in law__***, a fact ***__KNOWN__*** by the most senior legal advisor for the Defendant City of Lowell, is not actionable conduct.  That is patent nonsense.

## STATEMENT OF FACTS

The Plaintiff was a candidate for the School Committee race in the City of Lowell in the 2019 municipal elections.  The Plaintiff placed seventh in the election.  The top six finishers become the members of the school committee.  The mayor of Lowell, ex officio, serves as the seventh member and as Chair of the School Committee.

On or about February 26, 2021, a member of the Lowell School Committee resigned. According to the procedure normally followed by the City of Lowell, The Plaintiff would take the now vacant seat. However, for reasons that are still unclear, this did not happen.

Instead, apparently, the City's Law Department, through its solicitor, Defendant Christine O'Connor, *sua sponte*, initiated an investigation on the Plaintiff's eligibility for the office.

M.G.L. c. 51, §47B provides, "If at any time subsequent to the registration of a voter the registrars have probable cause to believe that the voter has made a false statement in his affidavit of registration, they may prepare a complaint setting forth the basis for their belief, and summon the voter to appear before them in the manner set forth in section forty-eight. They shall examine the voter and determine his qualifications to vote in the manner set forth in section forty-nine." The record and the submissions of the parties, in three Superior Court actions and two Appeals Court actions, fail to show a complaint initiated by any of the Defendant Election Commissioners.

An alternative method to question a voter's status is provided by M.G.L. c. 51, §48, "Upon complaint signed and sworn to by a registered voter and filed with the registrars at least fourteen days in a city, or at least four days in a town, before a primary, election or town meeting, stating that the complainant has reason to believe and does believe that a certain person by him therein named has been illegally or incorrectly registered, and giving the reasons for such belief, the registrars shall examine into such complaint and, if satisfied that there is sufficient ground therefor, they shall summon the person complained of to appear before them at a certain place and time before the next primary or election or town meeting to answer to the matters set forth in the complaint, and the substance of the complaint and a copy of this section and of section forty-nine shall be set forth in the summons. Service of the summons shall be made by an

officer qualified to serve civil or criminal process, not more than fourteen nor less than two days before the day named for appearance, by delivering in hand a copy of the summons to the person therein named, or by leaving it at his place of residence, or, if personal service cannot be made and the person's residence is unknown to the officer and cannot be ascertained by inquiry at the place of alleged illegal or incorrect residence or at any later residence of such person appearing on the register, then at such person's last residence, if any, known to the officer, or, if the person's last residence is unknown, at the last place appearing as his residence in the register. The officer shall return the summons to the registrars before the day named for appearance with the certificate of his doings endorsed thereon." Again, there is no evidence submitted in any state court actions that this procedure was followed at all.

Not only should the Defendants' have been aware of these statutes, but in a letter dated March 8, 2021, and mailed to the Defendants Election Commissioners, copy to the Defendants in the City Solicitors office, Plaintiff's counsel writes: "Initially, my client has instructed me to make enquiry as to the procedural issue of how this hearing was commenced.  According to the pamphlet cited by the City of Lowell law department in its March 2, 2021 letter to the mayor on this matter, <u>Massachusetts Secretary of State Office's Guide to Residence for Voting Purposes</u>, if the "If the ***<u>local board of registrars</u>*** (emphasis added) of voters has probable cause to believe a voter made a false statement . . . the ***<u>registrars</u>*** (emphasis added) may prepare a complaint stating their reasons."  There is no evidence that any member of the Board independently researched my client's history.

In the same letter, Plaintiff's counsel also wrote: "According to the pamphlet previously cited, any such voter who believes another voter is illegally or incorrectly registered, that voter may file a sworn complaint with the registrars.  This raises the question of the identity of the

7

mysterious informant and why is that identity being shielded?  The next question to be considered is why the City's law department took it upon itself to initiate its investigation without direction from city government.  Was guidance or instruction given by the machinery of government to conduct this investigation? If yes, when and by whom? If no, why not?"

The Defendant City of Lowell, and its agents, servants, and employees, began this investigation although the Plaintiff had served a full term on the Lowell School Committee from 2018-2019, using the same 363 Walker Street address.  The Plaintiff was given a hearing before the Defendant Election Commissioners on Tuesday, March 9, 2021 and Thursday, March 11, 2021.

Prior to the hearing on March 9, 2021, the Plaintiff provided a packet to the Defendant Commissioners that included a statement from counsel, an Affidavit from the Plaintiff, Exhibits supporting the Affidavit, and various statutes and case law to prove that he in fact does reside in Lowell.  The Parties were asked to supplement their submissions by 5:00 p.m. on Wednesday, March 10, 2021.  The Defendant City, ex parte, requested an extension to file its submission. Plaintiff's counsel objected to the extension.  Despite the objection, an assistant city solicitor, acting as the legal advisor to the Election Commissioners and as the Director of Elections, Elliot Veloso, granted the request of his superior, the City Solicitor, who was prosecuting the case, and the extension was granted.  Undersigned counsel was not provided a copy of the Defendant City's supplemental response until after 9:30 a.m., Thursday, March 11, 2021.

In a 20 minute or so supplemental proceeding, the Defendant Election Commission voted 1 in favor of the Defendant City, 1 abstaining, and 1 not voting, that the Plaintiff is not a bona fide resident of Lowell.  The Director of Elections then ruled that the vote was that the Plaintiff is not a resident of Lowell and therefore incapable of taking the seat.  The evidence produced by

the Defendant City of Lowell, to include irrelevant, incompetent, and immaterial questions asked by a Defendant Election Commissioner of the Plaintiff on March 11, 2021, was insufficient as a matter of law to support the vote of the Defendant Election Commissioners.  Crucial in the result of this hearing were two incorrect rulings of law made by Assistant City Solicitor Veloso.  One was that the chair does not vote unless there is a tie.  The second was that the vote of 1 in favor of the Defendant City, 1 abstaining, and 1 not voting was a carried Motion.  Considering the incorrect ruling on the vote taken by the Defendants, the seat would have been taken by the eighth-place finisher.  But for the negligent rulings of the Director of Elections, Plaintiff would have been spared huge legal expenses and public ridicule.

With no other recourse available, Plaintiff resorted to the court system to vindicate his rights.  In three Superior Court filings, and two Court of Appeal filings, Plaintiff prevailed each and every time and these pleadings resulted in extensive legal fees. In each and every instance, Defendants O'Connor and Anastasi signed pleadings where they knew, or should have known, such pleadings had no basis in fact or law, and were a violation of Mass. R. Civ. Pro. 11, and Mass. R. Pro. Res. 5.2.

Plaintiff made a Public Records Act Request to ascertain who had initiated the investigation and the City stonewalled that request.  As the result of a court ruling dated July 20, 2022, the City Solicitor, more than two months later, sent Plaintiff's counsel a letter in which she wrote:

> "Pursuant to the July 20, 2022 decision of the Court, the City was instructed to comply with Lay's public records request and produce document responsive thereto, to the extent that such documents exist even if the records reveal the identity of the complainant(s).

One group of documents requested relate to the statement 'questions, however, regarding Mr. Lay's eligibility have come to the attention of the law department. Specifically, is Mr. Lay a resident of the City and therefore eligible to serve?' There are no documents, other than the documents already produced, that are responsive to that statement."

In fact, the Defendant City never produced any documents revealing how the case against Plaintiff was commenced.

## **LEGAL STANDARD**

When evaluating motions under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006) (reviewing 12(b)(6)); Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009) (reviewing 12(b)(1)).

"Because federal courts are courts of limited jurisdiction, federal jurisdiction is never presumed." Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). The party asserting federal jurisdiction has the burden of demonstrating its existence. Id. Dismissal under Rule 12(b)(1) at the pleading stage is appropriate only when the facts alleged in the complaint, taken as true, do not support a finding of federal subject-matter jurisdiction. Fothergill, 566 F.3d at 251.  A 12(b)(1) challenge to the court's subject-matter jurisdiction must be addressed before addressing the merits of a case. Acosta-Ramírez v. Banco Popular de Puerto Rico, 712 F.3d 14, 18 (1st Cir. 2013).

To survive dismissal under Rule 12(b)(6), a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550

U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief

above the speculative level[.]" Id. at 545 (internal citations omitted). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009). In addition, "an adequate complaint must include not only a plausible claim but

also a plausible defendant." Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 594 (1st Cir. 2011).

Joubert v. Green, Civil Action 4:22-cv-40111-IT (D. Mass. Sep 25, 2023)

Dismissal is only appropriate if the complaint, so viewed, fails to allege "a plausible

entitlement to relief." Rodnguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007)

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S.Ct. 1955 1967, 167 L.Ed.2d 929

(2007)).  Marrero v. City of Brockton, Civil Action 23-11117-JGD (D. Mass. Jan 05, 2024)

The notice pleading rules embodied in Rule 8 of the Federal Rules of Civil Procedure

require that a Plaintiff's pleading, at minimum, "'give the defendant fair notice of ... at least ...

minimal facts as to who did what to whom, when, where, and why.'" Calvi v. Knox County, 470

F.3d 422, 430 (1st Cir. 2006) (quoting Educadores Puertorriquenos en Accion v. Hernandez, 367

F.3d 61, 68 (1st Cir. 2004)).  McLaughlin v. The Cambridge Sch. Comm., Civil Action 24-

10413-WGY (D. Mass. Mar 25, 2024).

<u>**ARGUMENT**</u>

I.   <u>The Plaintiff states colorable claims under 42 U.S.C., §1983 (Counts I-IV and they
     should not be dismissed.</u>

Defendants, in their Memorandum in support of their Motion to Dismiss, claim that they

are unable to discern whether Plaintiff is claiming an equal protection violation or a due process

violation.  The fact that Defendants admit there is a violation, they just are not able to ascertain

which one it is, defeats, *ab initio*, their Motion.  The Plaintiff will put their minds at ease:  he is claiming a violation of both.

As Defendants concede in their Memorandum, a claim under §1983 is a means of vindicating the federal rights elsewhere conferred.  The rights safeguarded by the Fourteenth Amendment can be categorized into three groups: first, procedural due process, second, the individual rights enumerated in the Bill of Rights, known as "incorporated rights" against the States, and third, substantive due process.

The vital requirement is State responsibility, Justice Frankfurter once wrote, that somewhere, somehow, to some extent, there be an infusion of conduct by officials, panoplied with State power, into any scheme to deny protected rights.  <u>Terry v. Adams</u>, 345 U.S. 461 (1953).

The Court has determined that due process requires, at a minimum: (1) notice; (2) an opportunity to be heard; and (3) an impartial tribunal. <u>Mullane v. Central Hanover Bank</u> (1950).

To conduct a hearing, before a municipal board where the legal advisor to that board is a subordinate to the attorney representing the municipality in the hearing, is such an obvious conflict of interest that counsel is shocked it even must be discussed.

As for "equal protection", it is axiomatic that the Plaintiff is entitled to exercise all the rights available to him as a United States citizen and he should be afforded the protection of the law to exercise those rights.

Counsel will state clearly, plainly, and simply herein for the benefit of the Defendants: When there are two statutes governing how a voter may be challenged to vote, or to run, or hold office, and the chief legal advisor of the City proceeds with administrative hearing where the legal advisor to the board is her subordinate, and then signs pleadings in judicial actions

attempting further to deny that citizen those rights, fully knowing that the requirements of either statute have not been met, those are allegations of equal protection AND due process claims under the Fourteenth Amendment.

Rule 8 of the Federal Rules of Civil Procedure provide that all that is necessary for a pleading is a short, plain statement of jurisdiction, which clearly the court has as there is an allegation of a denial of federally protected rights; a short, plain statement of the claim sufficient to place the Defendant(s) on Notice of the cause of action and that the Plaintiff is entitled to relief; and a demand for relief.  Plaintiff's pleading complies with every requirement and the Motion should be denied.

A.   The Plaintiff's Complaint should not be dismissed as it does state an equal
     protection claim and disparate treatment does not have to be based on a
     protected category.

This claim by the Defendants is easily disposed of by quoting a citation in Plaintiff's Memorandum.   "[A] plaintiff not relying on typically impermissible bases for classification9e.g. race, religion, etc.) must show that [he] was intentionally treated differently from others similarly situated, that no rational basis exist[ed] for that difference in treatment and that the different treatment was based on a malicious or bad faith intent to injure" Rocket earning, Inc. v. Rivera-Sanchez, 715 F.3d 1, 10 (1st Cir. 2013).

At the risk of beating a dead horse, there are two statutes under which the Defendant City could have proceeded to remove or challenge the Plaintiff.  Neither was followed.  The only remaining possibilities are that 1. The City Solicitor, on her own, for no rhyme or reason, decided to institute the proceedings against the Plaintiff; or 2. The Defendants, as well as other heretofore unknown and unnamed Defendants, for nefarious reasons related to the position of School Committeeman, sought to challenge the Defendant; but were too cowardly to put the name or

names on a written complaint; or 3. Somebody or somebodies, with influence and power, had been offended by the Plaintiff and sought to prohibit his gaining the seat.

It is preposterous that the City Solicitor woke up one morning and said, "Today I am going to use my office to challenge Dominik Lay's election to the school committee."  The likelihood of malice or bad faith is even more obvious given the feeble evidence she was able to muster to support the effort to deny Plaintiff his rights as a United States citizen.

There is more to this than meets the eye and developing the information to test the sufficiency or inadequacy of a case is what the Discovery process is designed to do.

> B.  The Plaintiff's Complaint should not be dismissed as he is not asserting a "property right" in an elected office but rather is claiming a denial of his rights to due process and equal treatment.

The Plaintiff prevailed in the prior state court proceedings and was sworn into office because of the state courts' rulings and findings.  He was then re-elected at the next election. The Defendants insist on categorizing Plaintiff's cause of action as one he has not, in fact, advanced.

Plaintiff has already outlined herein his cause of action and sees no reason to so do again.

> C.  The Plaintiff claims against O'Connor and Veloso individually (counts I-II) should not be dismissed as the Complaint does allege the process afforded to Mr. Lay was constitutionally insufficient and O'Connor and Veloso are not entitled to qualified immunity.

The defenses raised in this section of Defendants' Memorandum are without merit. In the first place, the cases they cite are employment hearings.  Plaintiff was not an employee attending a termination of employment hearing.  In the second place, there ***was never any statutorily required complained filed upon which the Election Commission could conduct a hearing.***  Plaintiff's counsel wonders why this fact is ***NEVER*** addressed in the thirty-page

memorandum filed by Defendants.  It is manifest that the failure to comply with a statute is a deprivation of rights.

As to the "qualified immunity" claim, Defendants "pound the table" on the law but not on the facts.  Fortunately, Plaintiff can "pound the table" on both the law and the facts, using the same case law cited by Defendants.  "Qualified immunity is a doctrine that shelters government officials from civil damages liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." McKinney v. Mangino, 873 F.3d 75, 80 (1st Cir. 2017) (internal quotation marks omitted), citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

Plaintiff's counsel poses the question, "at what point is the penny going to drop?".  In the written response to the City Solicitor's letter of March 2, 2021, counsel raised the two statutes and asked for the written complaint.  Presumably, the letter was passed to Defendant Veloso.  It was addressed to Defendant O'Connor.  At both hearings held before Defendant Election Commissioners, Plaintiff's counsel cited the statutes and asked where the written complaint(s) was/were.  Answer came there none.  As the court is bound to take as true all the allegations in the Complaint, at this stage of the case, the only possible outcomes are Defendants O'Connor and Veloso are "plainly incompetent" or are "knowingly violat[ing] the law".

D.  The Plaintiff's complaint against former Assistant City Solicitor Anastasi (Count III) should not be dismissed as it does allege a colorable cause of action.

Defendants Memorandum fails to consider Mass. R. Civ. Pro. 11.  Rule 11 provides, in part, "The signature of any attorney to a pleading constitutes a certificate that the attorney has read the pleading; that to the best of the attorney's knowledge, information, and belief there is a good ground to

support it; and that it is not interposed for delay." There was more than enough evidence before Defendant Anastasi to raise questions as to whether he should sign and file the pleadings he in fact signed and filed in state court.

M.G.L. c. 221, §38, provides:

> "Section 38. Whoever is admitted as an attorney shall in open court take and subscribe the oaths to support the constitution of the United States and of the commonwealth; and the following oath of office shall be administered to and subscribed by him:
>
> I (repeat the name) solemnly swear that I will do no falsehood, nor consent to the doing of any in court; I will not wittingly or willingly promote or sue any false, groundless or unlawful suit, nor give aid or consent to the same; I will delay no man for lucre or malice; but I will conduct myself in the office of an attorney within the courts according to the best of my knowledge and discretion, and with all good fidelity as well to the courts as my clients. So help me God."

The United States Court of Appeals for the First Circuit has indicated unmistakably that a defendant's attorney violates the Rule when counsel files "an answer creating issues that counsel does not affirmatively believe have a basis," Arena v. Luckenbach Steamship Co., 279 F.2d 186, 188-189 (1st Cir. 1960).

Massachusetts Rule of Professional Responsibility 3.1 provides, in part, "A lawyer shall not bring, continue, or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." Rule 5.2 provides, "A lawyer is bound by the Rules of Professional Conduct notwithstanding that the lawyer acted at the direction of another person." In the commentary to the Rule, the Reporter writes, "Although a lawyer is not relieved of responsibility for a violation by the fact that the lawyer acted at the direction of a supervisor, that fact may be relevant in determining whether a lawyer had the knowledge required to render conduct a violation of the Rules. For example, if a subordinate

filed a frivolous pleading at the direction of a supervisor, the subordinate would not be guilty of a professional violation unless the subordinate knew of the document's frivolous character."

A perfunctory review of the file, once the proceedings before the Election Commission were over and Plaintiff filed his first Complaint in Superior Court, would have put Defendant Anastasi on Notice of the defects in the Defendant City's case and would give a reasonable, ordinary attorney a foundation to question the reason for filing the opposition to Plaintiff's Complaint.  He failed in his obligation to exercise professional judgment, to the Plaintiff's detriment.

E.  <u>Count IV should not be dismissed as to former City Solicitor O'Connor because she did, in fact, sign and file Pleadings in Superior Court and the Appeals Court knowing full well there had been no compliance with the governing statutes for the decision of the Defendant Election Commissioners.</u>

The Memorandum of the Defendants to support this claim again is deficient in that it fails to focus on Defendant O'Connor's scienter on the lack of a written complaint to challenge the Plaintiff's ability to stand for election.  The Defendants' Memorandum goes to the elements of procedural due process ***without addressing the fact that there was no legal basis to oppose the pleadings in the first instance.***

Plaintiff incorporates herein by reference his arguments made as to Defendant Anastasi.

F.  <u>The Plaintiff's §1983 claims should not be dismissed as it does allege plausible municipal liability under *Monell v. New York Dep't of Social Services,* 436 U.S. 658 (1978).</u>

The Plaintiff's claims against the Defendant City can survive a <u>Monell</u> challenge.  The Plaintiff's injuries arose while seeking a seat on the school committee.  The Mayor of Lowell is, *ex oficio*, chair of the school committee.  According to the City of Lowell's official web site, "The Office of the City Manager is the Executive Department for the City of Lowell responsible for the long-term financial planning as well as the day-to-day activities of every department in

the city."  Certainly, these individuals were well aware of the two hearings before the Election Commission, the three civil actions filed by Plaintiff in Superior Court, and the two appeals the Defendant City filed in the Appeals Court.

Needless to say, all of these legal filings were of great interest to the public and received extensive, daily coverage in the local newspaper, as well as the local radio station.  Bloggers in the City who commented on current events also gave it wide coverage as did the Cambodian press.

To again quote from Defendants' Memorandum, ". . . the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice."  Bordanaro v. McLeod, 871 F2d 1151 (1st Cir. 1989).  It is difficult to maintain with a straight face the position that the "policymakers" of the Defendant City were unaware of the situation yet no one said a word or stepped in to call the City Solicitor to account.

Now that the Defendant has filed a federal complaint for damages, all the King's horses, and all the King's men, who were no where to be found during the underlying actions, are once again funding an opposition to the Plaintiff in the legal system and advancing the argument that they did nothing wrong.

II.     The Plaintiff's remaining state law claims should not be dismissed as Defendants have failed to meet their burden to dismiss the Federal claims.  In the alternative, the Federal Court should retain jurisdiction as the Statute of Limitations has run and Plaintiff's meritorious claims would be dismissed with no alternative forum for adjudication.

The Defendants have not met their burden in having the Federal claims dismissed.  In the unlikely event they have, Plaintiff would urge the court to exercise its discretion and retain jurisdiction as the Statute of Limitations on the actions has run and Plaintiff would effectively be without a forum.

III.    <u>If this Court retains Jurisdiction, it should not the state law claims as Plaintiff does state a claim upon which relief may be granted.</u>

A.    <u>The Plaintiff's state constitutional law claims under the Massachusetts Tort Claims Act do plausibly allege his Article IX and Article XI rights were violated.</u>

The Plaintiff is at a loss to respond adequately to the arguments put forward by the Defendants in this portion of their Memorandum.  Applying the standard that all the allegations in the Complaint are true, and reading the plain text of the Massachusetts Constitution, the conduct complained of was clearly in violation.  The numerous trips to the court house and payment of fees and costs certainly compelled the Plaintiff to "purchase" justice.  The Defendants had no legal basis for their conduct.  Short of an armed uprising, the Plaintiff's only recourse was to go to court and purchase justice, something that should have been freely obtainable to him at the ***<u>FIRST</u>*** hearing before the Election Commission.

According to Merriam Webster, "purchase" means "to obtain by paying money or its equivalent."  Clearly, the Plaintiff was compelled to purchase justice and the only reason he was required to purchase justice was because of the conduct of the Defendants.

Furthermore, in his Judgment in the first action filed with the Superior Court, the Justice adopted almost entirely the arguments advanced by the Plaintiff in the ruling in favor of the Plaintiff.  For the Defendants to maintain that the right to be elected is not absolute, citing the residency requirement, is some what puzzling.  The Plaintiff was ruled a resident of the City and serves even today as an elected member of the Defendant City's School Committee.

B.    <u>The Plaintiff states actionable claims under M.G.L. c. 258, §2, The Massachusetts Tort Claims Act.</u>

Attorneys in Massachusetts do have a duty of care to nonclients, in limited circumstances.  See <u>Robertson v. Gaston Snow & Ely Bartlett</u>, 404 Mass. 515, 522 (1989), <u>Page v. Frazier</u>, 388 Mass. 55, 63-64 (1983), <u>Logotheti v. Gordon</u>, 414 Mass. 308, 311-312, 607 N.E.2d 1015 (1993).

Essentially, it must be foreseeable that the nonclient will rely on the actions of the attorney and the actions of the attorney must not conflict with the duty to the client.  That is precisely the situation in the instant action.  Certainly, Plaintiff is entitled, as a citizen of the Commonwealth and as a citizen of the City of Lowell, to expect the legal department of the City to conduct itself in accordance with the Rules of Professional Responsibility and with the requirements of M.G.L. c. 221, §38.

With respect to the other arguments advanced by the Defendants, they fail to address the key part of M.G.L. c 258, §10 (j), reproduced herein in bold typeface:  "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, **which is not originally caused by the public employer or any other person acting on behalf of the public employer**."

There are only three possibilities for the injuries that Plaintiff sustained because of the Defendants: 1. Either they were extremely negligent and the Tort Claims Act controls; 2. They were malicious and intentional in their actions, in which case the Federal and State Civil Rights Acts control; or 3. A combination of both, depending on the Defendant.

### CONCLUSION

Defendants have made some seductive and very clever arguments in their Memorandum.  Most, however, are pre-mature.  There has been no Discovery yet.  When the Discovery process is complete, perhaps Plaintiff will need to file an amended Complaint.

What is interesting in the exhaustive Memorandum filed by Defendants (Plaintiff's Counsel is grateful the Court only allowed them to file a 30-page document vice a 38-page document) is what is does not address.  Namely, why were the operative statutes not followed?  Who is the eminence grise that caused the events to unfold?  Why, in the face of repeated losses in State court, did the City Solicitor and her office continue to litigate the matter to the Appeals Court?

Early in their Memorandum, Defendants comment on the financial compensation Plaintiff seeks

from the Defendants and more or less imply that there is something unsavory about the Plaintiff's seeking

redress in Federal Court. Making a "federal civil rights case" out of it.

Plaintiff merely states that untold millions have paid more than money to secure he rights denied

to him by the Defendants and for the rights he is now exercising.  It seems the Defendants still do not

understand, or do not value, those principles.

Should the Court see fit to allow any of the Prayers of the Defendants, Plaintiff very respectfully

would ask for an opportunity to amend his Complaint.

<div style="margin-left:50%">

The Plaintiff,
By his Attorney,


//s//Roland L. Milliard
Roland L. Milliard
BBO# 559361
1470 Lakeview Ave., Suite 2
Dracut, MA  01826
(978)-957-6799
roland@milliardlaw.com

</div>

April 1, 2024


## CERTIFICATE OF SERVICE

I, Roland L. Milliard, hereby certify that I caused a copy of the Memorandum in
Opposition to Motion to Dismiss by Complying with this court's directives relative to electronic
filing


April 1, 2024                                      //s// Roland L. Milliard