UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

Dominik Hok Lay,
     *Plaintiff*,


v.


The City of Lowell, Christine P. O'Connor, Individually and in her official and supervisory capacities as the City Solicitor for the City of Lowell, Elliott J. Veloso, individually and in his official capacity as Assistant City Solicitor for the City of Lowell, Nicholas Anastasi, individually and in his official capacity as Assistant City Solicitor for the City of Lowell, Beverly Anthes, as an Election Commissioner of the City of Lowell, Zoe Dzineku, as an Election Commissioner of the City of Lowell, James Pope, as an Election Commissioner of the City of Lowell, Eileen Donoghue, as Manager of the City of Lowell,
     *Defendants*.

Civil Action No. 1:24-CV-10514-NMG

**LEAVE TO FILE GRANTED ON
APRIL 9, 2024**

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(B)(1) and 12(B)(6)**

I.    This Court should disregard the new factual allegations listed in Mr. Lay's opposition brief that are not found in the four corners of his federal civil rights complaint

Mr. Lay's Opposition Memo includes a litany of new allegations not in his Complaint:

- "The Law Department and the City of Lowell sent a letter dated March 2, 2021, to the Mayor of Lowell, and claimed that 'Questions, however, regarding Mr. Lay's eligibility have come to the attention of the law department.'" *See* ECF No. 17, p. 3.

- "[I]n a letter dated March 8, 2021, and mailed to the Defendants Election Commissioners, copy [*sic*] to the Defendants in the City Solicitors [*sic*] office, Plaintiff's counsel writes: 'Initially, my client has instructed me to make enquiry as to the procedural issue of how this hearing was commenced. According to the pamphlet cited by the City of Lowell law department in its March 2, 2021 letter to the mayor on this matter, <u>Massachusetts Secretary of State's Office Guide to Residence for Voting Purposes</u>, if the 'If the [*sic*] ***local board of registrars*** (emphasis added) of voters has probable cause to believe a voter made a false statement … the ***registrars*** (emphasis added) may prepare a complaint stating their reasons.'" *See* id., at 7 (emphasis in original).

1

- "There is no evidence that any member of the Board independently researched my client's history." *See* id., at 7.
- "In the same letter, Plaintiff's counsel also wrote: 'According to the pamphlet previously cited, any such voter who believes another voter is illegally or incorrectly registered, that voter may file a sworn complaint with the registrars. This raises the question of the identity of the mysterious informant and why is that identity being shielded? The next question to be considered is why the City's law department took it upon itself to initiate its investigation without direction from city government. Was guidance or instruction given by the machinery of government to conduct this investigation? If yes, when and by whom? If no, why not?" *See* id., at. 7-8.
- "Pursuant to the July 20, 2022 decision …, the City was instructed to comply with Lay's public records request and produce document [*sic*] responsive thereto, to the extent that such documents exist even if the records reveal the identity of the complainant(s). One group of documents requested relate to the statement 'questions, however, regarding Mr. Lay's eligibility have come to the attention of the law department. Specifically, is Mr. Lay a resident of the City and therefore eligible to serve?" *See* id., at. 9-10.
- "According to the City of Lowell's official web site [*sic*], 'The Office of the City Manager is the Executive Department … responsible for the long-term financial planning as well as the day-to-day activities of every department in the city.'" *See* id., at. 17-18.
- "[A]ll of th[e] legal filings [in the Superior Court and Appeals Court] were of great interest to the public and received extensive daily coverage in the local newspaper, as well as the local radio station. Bloggers in the City who commented on current events also gave it wide coverage as did the Cambodian press." *See* id., at. 18.

Here, Mr. Lay did not allege the above facts in the Complaint or include them as exhibits.

Because "a court is ordinarily precluded from looking beyond the four-corners of a complaint …

in a Rule 12(b)(6) motion to dismiss," this Court should disregard these new allegations. *Reder*

*Enterprises, Inc. v. Loomis, Fargo & Co. Corp.*, 490 F.Supp.2d 111, 117 (D. Mass. June 1, 2007).

II.    Mr. Lay's Fourteenth Amendment claims brought under 42 U.S.C. § 1983 (counts I-
       IV) should be dismissed

Mr. Lay begins by misinterpreting what the Defendants stated in their Opening Brief.

According to Mr. Lay, "Defendants admit there is a violation [of Mr. Lay's Fourteenth Amendment

rights], they just are not able to ascertain which one it is[.]" *See* ECF No. 17, p. 11-12. What

Defendants *actually* said was that "[t]he Complaint does not specify whether the Plaintiff is

alleging either an equal protection violation or claiming his due process rights were violated." *see*

ECF No. 14, p. 10. Because Mr. Lay's Complaint was ambiguous about the specific Fourteenth

Amendment claim, the Defendants construed his Complaint as alleging both an equal protection and a due process claim and addressed the sufficiency of both.  *See* ECF No. 14, p. 10-11.

      A.  <u>Mr. Lay's Complaint does not plausibly allege an equal protection violation</u>

Mr. Lay appears to concede that Defendants did not make "impermissible considerations such as race, religion" or "inten[d] to inhibit or punish the exercise of constitutional rights[.]" *West Street Group, LLC v. Epro*, 564 F.Supp.2d 84, 92–93 (D. Mass. July 10, 2008).  Instead, he argues that "[a] plaintiff not relying on typically impermissible bases for classification (e.g., race, religion, etc.) must show that [he] was intentionally treated differently from others similarly situated, that no rational basis exist[ed] for that difference in treatment, and that the different treatment was based on a malicious or bad faith intent to injure."  *See* ECF No. 17, p. 13, citing Rocket *Learning, Inc. v. Rivera-Sanchez*, 715 F.3d 1, 10 (1st Cir. 2013).  Mr. Lay has not "provid[ed] any information about how any other party was similarly situated or present a motive to explain why the [Lowell] officials would treat [him] arbitrarily or intentionally."  *Donovan v. City of Haverhill*, 311 F.3d 74, 77 (1st Cir. 2002) (dismissing equal protection claim on that basis).

Mr. Lay's Fourteenth Amendment claims should be dismissed with prejudice to the extent they allege the Defendants violated the Equal Protection Clause.

      B.  <u>Mr. Lay's Complaint does not plausibly allege a due process violation</u>

The Fourteenth Amendment's Due Process clause provides that states cannot "deprive any person of life, liberty, or property, without due process of law."  *See* U.S. Const., Amdt. 14, § 1. As noted in Part I(B) of the Defendant's Opening Brief, Mr. Lay's due process claim falls apart as a threshold matter because an elected office is not considered a protected "property" or "liberty" interest as defined by the Fourteenth Amendment's Due Process Clause.  *See Snowden v. Hughes*, 321 U.S. 1, 7 (1944), citing *Taylor v. Beckman*, 178 U.S. 548, 577 (1900).  Thus, Mr. Lay cannot

state a procedural due process claim over the Election Commission's purported "deprivation" of

the School Committee seat, even if the processes afforded to him *were* constitutionally deficient.

Mr. Lay does not dispute that *Snowden* and *Taylor* are binding.  Instead, he asserts that he

"does not claim a property right to the office of school committeeman [*sic*]."[1]  *See* ECF No. 17, p.

4.  He "maintain[s]" that his "rights as a citizen of the United States" to "due process[,]" including

"the right to a fair and impartial hearing," "the right to be challenged for his eligibility ... in

accordance with the laws provided for such challenges" and "the right to know [his] accuser" were

deprived from him.  *See* ECF No. 17, p. 4.

Mr. Lay's logic is circular.  Each of the "rights" he claims were "deprived" by the Election

Commission relate to what due process is, not whether he had a liberty or property interest.  For

procedural due process claims, courts must follow a "two part inquiry: ... whether [Mr. Lay] was

deprived of a protected interest" (life, liberty, or property), "and, if so, what process was his due."

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982).  Mr. Lay cannot challenge the adequacy

of the process without *first* plausibly alleging that a liberty or property interest was taken through

deficient process.  Here, the only interest Mr. Lay was "deprived" of by the Election Commission

was the School Committee seat, which the Supreme Court in *Snowden* and *Taylor* held is not a

protected interest for purposes of the Fourteenth Amendment's Due Process Clause.

Mr. Lay's Fourteenth Amendment claims should be dismissed to the extent they allege a

procedural due process violation.

> C.  <u>Mr. Lay's claims against Veloso and O'Connor (counts I-II) should be dismissed
> because the Complaint does not plausibly allege the process afforded at the Election
> Commission hearings was deficient and, even if it did, qualified immunity applies</u>

---

[1] An assertion difficult to reconcile with Mr. Lay's Complaint, as he alleges the Defendants
instigated "a procedure designed to deny the Plaintiff **his** lawfully won seat[.]"  *See* ECF No. 1, p.
6 (emphasis added).

Even if the issues discussed above in Parts II(A)-(B) were not, by themselves, fatal to Mr. Lay's constitutional deprivation arguments, Mr. Lay cannot point to a single case standing for the proposition that the processes afforded to him in the March 9 and 11, 2021 Election Commission tribunals were constitutionally deficient.  First, he claims that the Law Department and Election Commission did not have statutory authority to hold the hearing, and violated M.G.L. c. 51, § 47B or, alternatively, M.G.L. c. 51, § 48.  *See* ECF No. 1, p. 2; ECF No. 17, p. 6.  Even if Mr. Lay were correct,[2] this still does not render what happened in the Election Commission tribunal a federal civil rights violation.  Mr. Lay asserts that "[i]t is manifest that the failure to comply with a statute is a deprivation of rights."  *See* ECF No. 17, p. 15.  But deprivation of constitutional rights claims under 42 U.S.C. § 1983 require that the Defendants deprived Mr. Lay of "rights secured by the [United States] Constitution or by *federal* law."  *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008) (emphasis added).  As Mr. Lay concedes, he is only alleging a violation of *state*, not *federal*, statutes.  Second, Mr. Lay suggests that Veloso was biased because he reported to O'Connor.  As Mr. Lay puts it, "To conduct a hearing, before a municipal board where the legal advisor to that board is a subordinate to the attorney representing the municipality in the hearing, is such an obvious conflict of interest that counsel is shocked it even must be discussed."  *See* ECF No. 17, p. 12.  The First Circuit, to the contrary, held in *Chmielinski v. Massachusetts*, 513 F.3d 309, 317–

---

[2] Mr. Lay is not correct.  Sections 47B and 48 apply to the disqualification of *registered voters*, not *candidates* seeking to hold office in a municipality.  The Massachusetts Appeals Court recognized in *Lay v. City of Lowell*, 101 Mass. App. Ct. 15, 21 n. 8 (2022) that the relevant statutes to Mr. Lay's eligibility were M.G.L. c. 53, § 11 and M.G.L. c. 55B, § 7, which "establish procedures for city solicitors and election commissions to consider and resolve challenges to local candidates' nomination papers[.]"  Rebuking the same argument Mr. Lay advances in this Court, the Appeals Court stated: "[t]hese provisions of the election laws relating to voter and candidate qualifications ***provided sufficient basis for the commission's proceedings to determine whether Lay was a resident of Lowell eligible to fill the vacant seat***."  *Id*. (emphasis added).

18 (1st Cir. 2008) that "there is no requirement that the hearing officer be impartial; indeed, the terminating officer may preside."[3]

Mr. Lay also criticizes the Defendants for "pound[ing] the table" on qualified immunity, *see* ECF No. 15, p. 15, while not citing a single case that says it was "clearly established" that the Law Department violated federal law or the U.S. Constitution.  Mr. Lay's inability to offer a *single* case in his favor is fatal to his qualified immunity argument.  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("precedent must have placed the statutory or constitutional question beyond debate").

D. <u>Mr. Lay's § 1983 claims against Anastasi and O'Connor (count III-IV) should be dismissed</u>

Mr. Lay claims that Anastasi and O'Connor can be sued for a deprivation of his federal civil rights based *solely* on the fact that, according to Mr. Lay's counsel, they violated Rule 11 of the Massachusetts Rules of Civil Procedure, Massachusetts General Laws chapter 221, § 38, and Mass. R. Prof. Ct. 3.1 & 5.2(a).  Any suggestion that the Law Department violated the above-mentioned rules and statutes is frivolous at best.  As set forth above in footnote 2 of this Reply Memorandum, Mr. Lay's argument that the Election Commission violated state election law was implicitly rejected by the Massachusetts Appeals Court.  *See Lay v. City of Lowell*, 101 Mass. App. Ct. 15, 21 n. 8 (2022) (noting M.G.L. c. 53, § 11 and M.G.L. c. 55B, § 7 "provided sufficient basis for the commission's proceedings to determine whether Lay was a resident of Lowell eligible to fill the vacant seat").  Even if Mr. Lay were correct, he does not plausibly allege a deprivation of Mr. Lay's ***federal*** rights, a prerequisite for claims under § 1983.  Mr. Lay does not cite any authority

---

[3] Mr. Lay cites to *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) to say that "due process requires, at a minimum: (1) notice; (2) an opportunity to be heard; and (3) an impartial tribunal." *See* ECF No. 17, p. 12. *Mullane* held that due process requires "notice" and an "opportunity to appear and be heard[,]" but does not say an impartial tribunal is required. *Mullane*, supra, 339 U.S. at 656.

for the proposition that a government attorney who violates rule 11 in litigating a case constitutes

a civil rights violation against the adverse party.

> E. Mr. Lay's _Monell v. New York City Dep't of Social Services_, 436 U.S. 658 (1978) claims against the City should be dismissed because he does not allege a municipal policy or custom that caused a deprivation of his federal civil rights

There is no merit to Mr. Lay's argument that the City is liable under the Supreme Court's

decision in _Monell_.  First, the sole basis Mr. Lay provides for _Monell_ liability is an excerpt from

the "City of Lowell's official web site,"[4]  _see_ ECF No. 18, p. 21, which is found nowhere in his

Complaint.  The Court should disregard it.  _See, e.g._, _RooR International BV v. Kinan Shouk, Inc._,

2019 WL 5088742, *3 (M.D. Fl. July 31, 2019) ("[plaintiff's] product website is outside of the

four corners of the Complaint, and the Court declines to accept the submission of material outside

of the pleadings or the attachments thereto").  Second, Mr. Lay still does not allege a municipal

"policy or custom" that was the "moving force" behind his purported constitutional deprivation.

_Monell_, supra, 436 U.S. at 694.  Mr. Lay's argument rests on an isolated quote from the First

Circuit's decision in _Bordanaro_ that "… the policymaking officials of the municipality can be said

to have either actual or constructive knowledge **_of it_** yet did nothing to end the practice."  _See_ ECF

No. 17, p. 18, quoting _Bordanaro v. McLeod_, 871 F2d 1151, 1156 (1st Cir. 1989) (emphasis added).

Because, according to the City's website, "the City Manager is the Executive Director for the City

of Lowell responsible for the … day-to-day activities of every department," _see_ ECF No. 18, p.

21, Mr. Lay speculates that "[i]t is difficult to maintain with a straight face that the 'policymakers'

of the Defendant City were unaware of the situation yet no one said a word or stepped in to call

the City Solicitor to account."  _See_ ECF No. 17, p. 18.  This argument distorts the black letter

---

[4] Mr. Lay merely quotes the City's website but does not include a searchable citation.  For the Court's convenience, Defendants provide a citation herein. _See City Manager | Lowell, MA_, CITY OF LOWELL, available at https://www.lowellma.gov/198/City-Manager (last visited Apr. 4, 2024).

requirements for *Monell* liability.  Mr. Lay selectively edits *Bordonado* to create the impression that a policy maker has to merely know about a constitutional deprivation for the City to be liable under *Monell*.  *Bordonado*, in context, states differently.  For *Monell* liability, the "***custom or practice***" must be "so well settled and widespread" that the "policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *Bordanaro*, supra, 871 F2d at 1156 (emphasis added).  At most, Mr. Lay alleges in his Opposition Memo (not the Complaint) that the City Manager is a policymaker for purposes of *Monell*; but he does not set forth any municipal policy or custom that led to the Election Commission's decision to find Mr. Lay ineligible to serve on the School Committee.

 For that reason, counts I-IV should be dismissed with prejudice as to the City of Lowell.

 III. On the merits, Mr. Lay's state-law claims are legally insufficient as a matter of law

  A. Mr. Lay's state constitutional claims (counts V-VI) under the Massachusetts Civil Rights Act ("MCRA"), M.G.L. c. 12, § 11I, should be dismissed

 Mr. Lay spends less than a single page attempting to justify why his art. 9 and 11 MCRA claims are legally sufficient; he does not cite *any* authorities to support his arguments.  *See* ECF No. 17, p. 19.  Moreover, Mr. Lay's Opposition Memo does not address his failure to allege any of the individual defendants he sued engaged in any "threats, intimidation or coercion." *McGunigle v. City of Quincy*, 835 F.3d 192, 205 (1st Cir. 2016) (dismissing MCRA claims on that basis).  That fact alone warrants dismissing Mr. Lay's MCRA claims with prejudice.

  B. Mr. Lay's negligence claims (counts VII-VIII) under the Massachusetts Tort Claims Act ("MTCA"), M.G.L. c. 258, § 2, should be dismissed

 Mr. Lay suggests that the Law Department Defendants owed *Mr. Lay* a legal duty to comply with the Mass. R. Prof. C. 3.4, M.G.L. c. 221, § 38, and Mass. R. Civ. P. 11, and that their non-compliance amounts to legal malpractice Mr. Lay can sue the City for.  *See* ECF No. 17, p. 19-20.

Even if the Law Department Defendants violated all of the above rules, a legal malpractice suit is not a mechanism to enforce that grievance.  Mr. Lay does not cite a single case for the notion that a non-client can sue an opposing attorney for legal malpractice for violating Mass. R. Prof. C. 3.4, M.G.L. c. 221, § 38, or Rule 11.  A litigant faced with an attorney that files a groundless lawsuit can (1) file a motion for sanctions, seeking attorney's fees as restitution, or (2) report the unethical attorney to the BBO for violating Mass. R. Prof. C. 3.4.  Mr. Lay tried – several times – to get the Superior Court and Appeals Court to sanction the City for advancing arguments Mr. Lay disagreed with, and those requests were denied.[5]  What Mr. Lay seeks here is the ability to relitigate sanctions arguments that were either never advanced or rejected by the prior courts overseeing his cases.  "[S]ound social policy would not be advanced" if he were allowed to do so.  *Davis v. Westwood Group*, 410 Mass. 739, 747 (1995).

Mr. Lay cites a litany of cases that say attorneys *in limited circumstances* owe a legal duty to non-clients.  But every case Mr. Lay cites to **undermines** his argument; the courts in each decision agreed the attorney-defendant did not owe a duty to the non-client plaintiff because, like here, the non-clients had interests that conflicted with the attorney's client.[6]  Mr. Lay offers no legal basis for the Court to find Anastasi and Veloso owed a legal duty *to Mr. Lay*.

---

[5] *See Dominik Lay v. City of Lowell*, Massachusetts Superior Court, Middlesex County, Civil Action No. 2181CV00551 (denial on May 7, 2021 of Mr. Lay's motion to sanction the City of Lowell); *see also Lay v. City of Lowell*, 101 Mass. App. Ct. 15, (2022) (denying plaintiff's request for appellate attorney's fees under M.G.L. c. 231 § 6F); *Dominik H. Lay v. Stacie M. Moeser et al.*, Massachusetts Superior Court, Middlesex County, Civil Action No. 2181CV00792, Doc. No. 9 (order denying plaintiff's request for attorneys' fees & costs).

[6] *See, e.g.*, *Robertson v. Gaston Snow & Ely Bartlett*, 404 Mass. 515, 522 (1989) (verdict finding attorney owed a legal duty to a non-client against weight of the evidence); *Page v. Frazier*, 388 Mass. 55, 63–64 (1983) (attorney retained by bank to conduct title search did not owe a duty to non-client mortgagors), *Logotheti v. Gordon*, 414 Mass. 308, 311–12 (1993) (non-client heir of decedent-client could not sue decedent's lawyer for negligent preparation of will which deprived intestate share of decedent's estate because it "would be imposing conflicting duties on attorneys").

Counts VII-VIII of the Plaintiff's Complaint should be dismissed.

## CONCLUSION

Mr. Lay concludes by stating Defendants' dismissal arguments are "pre-mature[.] [*sic*]" *See* ECF No. 17, p. 20. "When the Discovery process is complete," Mr. Lay says "perhaps [he] will need to file an amended Complaint." *Id*. That is not how cases are resolved in the U.S. District Court for the District of Massachusetts. Plaintiffs who file federal lawsuits must, before getting the benefit of discovery, show "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). Mr. Lay has not done so here. The Plaintiff's Complaint should be dismissed with prejudice.

> Respectfully submitted,
> The Defendants,
> By their attorneys,
>
> **/s/ Michael D. Broderick**
> Michael D. Broderick, Esq., First Assistant City Solicitor
> BBO # 660652
> mbroderick@lowellma.gov
> Thomas G. Wood, Esq., Second Assistant City Solicitor
> BBO # 707877
> twood@lowellma.gov
> City of Lowell Law Department
> 375 Merrimack Street, 3rd Floor
> Lowell, MA 01852-5909
> (978) 674-4050

Dated: April 10, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2024, the foregoing document was filed electronically through the CM/ECF system and was served upon all registered participants in this case, as identified in the Notice of Electronic Filing (NEF).

> **/s/ Thomas G. Wood**
> Thomas G. Wood, Assistant City Solicitor